## ANDREW BRIXEN, RESPONDENT, *v.* DESERET NA-TIONAL BANK, APPELLANT.

BANKS AND BANKING—NEGLIGENCE OF DEPOSITOR.—Where a real estate agent, whose character was considered good, according to the common and ordinary practice, negotiated a loan upon certain property, and a mortgage ostensibly executed by the owner of the property was made, and the person making the loan gave to the real estate agent a check for the money loaned, payable to the order of the owner of the property, and the check was presented and paid at the bank, and subsequently it was discovered that the name signed to the mortgage and also that endorsed on the back of the check were forgeries; *held,* that the delivery of the check to the real estate agent for the payee, was not such carelessness as to exempt the bank from liability.

ID.—DELAY IN DISCOVERING FORGERY—EXAMINING PASS-BOOK.—A customer and depositor of a bank is not presumed to know the signature of the payee of his check, and if it does not appear that he in fact knew the signature, he is not guilty of negligence in not discovering a forgery, and if the bank's officers before paying the forged check could have ascertained by proper care and skill that the check was forged, the bank in any event would be liable.

ID.—DELAY OF DEPOSITOR IN TENDERING BACK CHECK.—A depositor on discovering a forgery, on the same day went to the bank and notified it, and said that he would hold the bank responsible. The bank not having paid, twenty-four days thereafter, he tendered them the check; *held,* that if it was necessary for the depositor to tender back the check, such tender within a reasonable time was sufficient.

EVIDENCE—LOSS BY DELAY.—When a bank claims to have been injured by delay in discovering a forgery, or in tendering back a forged check, evidence that the bank has recourse upon another solvent bank, and could not be injured by the delay, is not improper.

APPEAL from a judgment of the district court of the third district, and from an order refusing a new trial.

The following is the charge of the court to the jury:

Gentlemen of the jury, the court charges you that the relation of a bank and its depositor is one simply of debtor and creditor, and the depositor is not chargeable with any payments except such as are made in conformity with his

orders; and if you believe that the endorsement of Dunbar's name on the check in question was forged, then the defendant, in paying such check, paid its own money, and discharged no part of its indebtedness to the plaintiff. The defendant was bound to see to it at its peril that the endorsement of W. A. Dunbar was genuine; that it paid the check to one entitled to the payment thereof; and the loss, as between it and the plaintiff, for a wrongful payment, must fall upon it, unless the plaintiff has been guilty of negligence in the discovery of the forgery, or in notifying the defendant thereof after discovery, by which negligence defendant has suffered damage; but if the plaintiff was not acquainted with Dunbar's signature, it cannot be said that he was guilty of negligence in not discovering, on the return of the check to him, the fact that somebody else had forged Dunbar's name in the endorsement.

You are further charged that if the plaintiff delivered the check in controversy to C. J. Smith, claiming to be Dunbar's agent, for transmission to said Dunbar, and received from said Smith, as consideration therefor, a note and mortgage purporting to be signed by said Dunbar, and if the plaintiff was not acquainted with Dunbar's signature, and believed the same genuine, and had no reason to believe the same forged, then it was not negligence in him to rely on the presumption that no crime had been committed, and to make no inquiries.

You are further instructed that if you believe from the evidence that the endorsement of the payee, Dunbar, was forged on the check in question, and that the defendant's officers before paying the same, could by ordinary and proper care and skill have detected the forgery, then the defendant cannot receive a credit for the amount of the check, even if the plaintiff was thereafter guilty of negligence in discovering the forgery or returning to the defendant the check with the endorsement so forged.

If you believe from the evidence that the plaintiff, on November 11th, 1884, was a depositor of the defendant's bank, and as such drew the check in controversy, then the defendant, before paying such check, was bound to ascer-

tain the genuineness of the payee's endorsement. The only authority conferred by the plaintiff upon the bank was to pay the check upon the order of W. A. Dunbar, and payment upon the forged endorsement did not bind the plaintiff.

You are further charged that the writing up of a bank book, with a return of vouchers, or a statement of accounts, precludes no one from ascertaining the truth, and claiming its benefit; and if it happened that upon such statement of account a credit was, by mistake, allowed to the bank to which it was not entitled, the law is that neither party is to be benefited or injured by such mistake, but that the bank must refund the amount of such credit.

And the formal charges followed.

The remaining facts are found in the opinion.

*Messrs. Marshall & Royle,* for appellants.

The drawer of the check is the principal debtor, and there is no obligation on drawee until the check is presented.    2 Dan. Neg. Inst., (3d Ed.) sec. 1587.

Until advised to the contrary the bank had the right to presume that Brixen had entered into a contract with the payee in the check, and each subsequent endorser thereof. 16 N. Y., 141, *Farmers, &c., Bank* v. *Butchers, &c., Bank.*

In making and putting the check in circulation it was the duty of Brixen "to guard not only himself but the public against frauds and alterations."    75 Penn. St., 190 and 191, *Zimmerman* v. *Rote;* 79 Penn. St., 372, *Brown* v. *Reed.*

Brixen in putting the check in circulation must have been without fault or negligence to enable him to recover. 2 Dan. Neg. Inst., secs. 1657, 1367, 1661, note 1; 17 Mass., 43, *Gloucester Bank* v. *Salem Bank,* and other authorities hereinafter cited.

In permitting the check to pass from his hands into circulation, Brixen thereby gave "warranty of the capacity of the payee" (Dunbar) "to endorse the paper."    *    *    *    * Brixen in making such a check intimated "to all persons that he considers (Dunbar) capable of making an order sufficient to transfer the property in the check:"    Bigelow

on Estoppel, page 447; 2 Barnewell & Cresswell, 299, 300, (9th Eng. Com. Law, 137, 138,) *Drayton* v. *Dale*; 3 Exchequer Repts., 453, *Halifax* v. *Lyle*; 15 Mass., 274, *Nightingale* v. *Withington.*

Brixen should have seen to it, that the check was delivered into the hands of the payee Dunbar, for his warranty that Dunbar had power to endorse could not be made good without such delivery:    2 Dan. Neg. Inst., sec. 1582; 1 Dan. Neg. Inst., sec. 67.

But Brixen hands the check to one who has no connection with Dunbar, the payee, without taking one single precaution that a prudent man should have taken, and puts the check in circulation, saying to the world, he had delivered it to Dunbar and Dunbar had a right to endorse it.    The bank had a right, when the check was presented to it with Brixen's genuine signature as drawer, to believe and presume, as against Brixen, that Brixen had delivered the check to Dunbar, that Dunbar had endorsed it, and that the transaction was free from fraud, actual or constructive, and fair in its origin.    The proximate cause of the loss was Brixen's negligence.

Brixen misled the bank, and cannot recover: 4 Bingham, 253, (13th Eng. Com. Law Reports, 493), *Young* v. *Grote.*
This case of *Young* v. *Grote,* is commented on with approval in 67 Penn. St. 86, *Garrard* v. *Haddon*; also, in 55 Ills., 226, *Harvey* v. *Smith*; also, in 63 Ills., 324, *Yocum* v. *Smith*; also, in 4th Ohio St., 667, 668, *Ellis & Morton* v. *Ohio Life Ins. & Trust Co.*; also, in 117 U. S., 114, *Leather Manufacturers' Bank* v. *Morgan.*

We cite further upon the proposition we are considering:    79 Penn., 372, *Brown* v. *Reed*; 21 N. Y., 531, *Van Duzer* v. *How*; 63 Ills., 324, *Yocum* v. *Smith*; 55 Ills., 224, *Harvey* v. *Smith*; 17 Mass., 42, 43, *Gloucester Bank* v. *Bank of Salem*; 18 Conn., 354, 358, *Hoyt* v. *Seely*; 1 Term. R. 16, *Fitzherbert* v. *Mather*; Storey on Agency, sec. 127.

And as illustrating the burthen cast by negligence, and especially of negligence after payment of forged paper: 117 U. S., 106 to 120, *Leather Manufac. Bank* v. *Morgan;* 10 Wheaton, 340, *United States Bank* v. *Bank of Georgia;* 17 Mass., above cited.

*Messrs. Hall & Marshall,* for respondent.

It is familiar law that a bank is only authorized by a check payable to a named payee or order to pay to the party named, or on a valid indorsement, and that if it pays to a holder under a forged endorsement of the payee's name, it pays its own money, and not the drawer's, nor does such pretended payment alter the true state of the account between the bank and drawer. In law the check remains unpaid: 94 U. S., 347, *First National Bank* v. *Whitman;* 91 N. Y., 111; 117 U. S., 107; 94 U. S., 346; 73 N. Y., 429.

But it is contended that Brixen was so negligent in the performance of the duty he owed the bank that the loss as between the two innocent parties should fall on him. This negligence is claimed first from his conduct prior to the forgery; second, in his failure to tender the check to defendant on the day of the discovery of the forgery and for twenty-one days thereafter, and in his failure to discover the forgery prior to November 7th, 1885.

If we admit for the sake of argument that Brixen was negligent in intrusting the check to Smith, the deceiving of the bank by a forged indorsement of Dunbar's name was not the proximate result of such negligence: 18 Moak. E. R., 204, *Arnold* v. *Cheque Bank;* 17 Mass., 1, (9 Am. Dec., 117.) *Salem Bank* v. *Gloucester Bank*; 73 N. Y., 429, *Welch* v. *German American Bank.*

But in this case we contend that in handing the check to Smith, Brixen was entirely free from negligence, and acted as a majority of prudent business men would have done under the circumstances. That Brixen was not negligent in discovering the forgery seems to us very clear under the authorities: 73 N. Y., 429, *Welch* v. *German American Bank;* 117 U. S., 117, *Bank* v. *Morgan;* 6 Fed. R., 852, *U. S.* v. *National Park Bank;* 6 Kans., 456, (7 Am. R., 568),*Bank* v. *Tappan.*

As to the effect of evidence that such transactions were common: 119 U. S., 560, *Goetz* v. *Bank;* 1 Denio., 92, *Cook* v. *Trans. Co.*

Brixen had a right to assume that the bank had discharged its own duty to itself, and was not bound to cou-

ceive it possible that the bank had charged him with money which had not been paid upon his order:    10 N. Y., 83, *Weiser* v. *Denison.*

He had a right to assume that before paying the check the bank would ascertain the genuineness of the indorsement:    73 N. Y., 429.

The counsel for appellant say that the bank was under no obligation to Brixen to ascertain the genuineness of the indorsement.    The duty of the bank was to itself not to pay its money to one not entitled to it; the duty of the bank to Brixen was not to charge Brixen with any payment not made on his order:    94 U. S., 346; 91 N. Y., 111.

In every case it is sufficient if the forged instrument be tendered back in a reasonable time:    2 Dan. N. I., sec. 1372 a; 75 Ill., 639.

What is a reasonable time must in every case depend upon the circumstances:    91 U. S., 397, 402, *Cooke, et al.*, v. *U. S.;* 4 Ohio St., 662, *Ellis* v. *Ins. & Trust Co.*

If the defendant's officers, before paying on the forged indorsement, could by proper care and skill have detected the forgery, it cannot receive a credit for the amount so paid even if the plaintiff was negligent:    117 U. S., 112, *Bank* v. *Morgan.*

The evidence of defendant's cashier showed that the defendant had in its possession Dunbar's genuine signature and that a comparison would have at once exposed the forgery.

But even if the defendant was not negligent it will not be enough for it to show negligence on the part of plaintiff; it must show an actual damage proximately resulting therefrom:    6 Fed. R., 853, *U. S.* v. *National Park Bank;* 123 Mass., 71, *Welch* v. *Goodwin;* 59 N. Y., 15, *Allen* v. *Fourth Nat. Bank;* 2 Dan. N. I., sec 1372.

BOREMAN, J.:

The plaintiff (respondent) sued the defendant (appellant) for $752, alleged to be on deposit in the bank to the credit of the plaintiff, and which defendant refused to pay to plaintiff.    Defendant in its answer denied that said or any sum remained on deposit in the bank to the credit of

plaintiff. The district court gave judgment for the plaintiff for the amount claimed, and thereupon the defendant appealed to this court. The facts upon which the liability of the bank is claimed, are, in brief, as follows, The plaintiff was a customer and regular depositor at the bank. While he was so, on the 10th of November, 1884, a real estate agent named C. J. Smith, as other real estate agents in Salt Lake City, was acting as a broker in obtaining and making loans of money upon real estate security. In that capacity he presented himself to plaintiff, and asked him if he had any money to loan upon such security; and, being answered in the affirmative, he took the plaintiff to see the property belonging to W. A. Dunbar, which was unimproved city property. Plaintiff then went to the county recorder's office to learn about the title. Being satisfied with the title, he told the real estate agent that he would make the loan, and that the agent could have the papers made out and brought to him, and he would give his check for the amount. Nothing against the character of the real estate agent appeared up to this time, and the manner of transacting the business was not uncommon. The agent brought the note and mortgage to the plaintiff. They appeared to have been duly executed, and the plaintiff handed the real estate agent a check for $752, the amount of the loan, less six months' interest deducted. The check was drawn payable to the order of W. A. Dunbar, the person to whom the drawer supposed he was loaning the money. The bank, in accordance with its practice, as to all depositors, delivered to the plaintiff once each month all checks which had been paid up to that time. He received the check in question, among others, about the 1st of December, 1884. He continued to be a depositor and customer of the bank until the 1st of May, 1885. In September, 1885, the interest being overdue on the loan, the plaintiff called at the residence of Dunbar, in Salt Lake City, in regard to the matter. Dunbar was absent in Idaho, and his wife, knowing nothing of the matter, said that she would write to Mr. Dunbar. Early in November following, Dunbar came home, and called to see the plaintiff about the matter. Upon the note and mortgage being

shown him, Dunbar pronounced both the note and mort-
gage to be forgeries.  This was on November 7, 1885.  The
plaintiff then brought out the check, and Dunbar pro-
nounced his name indorsed thereon to be also a forgery.
It appears from the evidence that Dunbar was not in the
territory at the time the loan was effected, and knew noth-
ing of the transaction.  The plaintiff, immediately on the
same day, November 7, went to the defendant bank, and
asked if the signature of Dunbar was a forgery, and the
cashier, after inspecting it, said that he believed it was.
The plaintiff then went to his attorney, and they together
went to the bank, and the plaintiff told the defendant that
he would hold the bank responsible.   But, at the sugges-
tion of the cashier, he delayed action for some days.   On
the 1st of December, he went to the bank, and formally
offered back the check, with the forged name upon it, and
demanded the money claimed to be due him.   The bank
refused to receive back the check, and refused to pay him
the sum claimed.   He then brought this action to recover
the amount.   The defendant contends that the judgment
is erroneous; that the bank is not liable to pay plaintiff
the amount claimed in this action, for the reason that the
money had already been paid out upon a check of the
plaintiff drawn in favor of W. A. Dunbar; that, although
the payee's name indorsed on the check was a forgery, the
loss should fall upon the plaintiff, because it was through
his negligence that the check was put into circulation—he
having delivered it to a stranger, and not to the payee.

It is a well-recognized general rule that where a party
has money in a bank, and draws his check therefor, pay-
able to the order of a particular person, it gives authority
to the bank to pay the money to such person or to his
order, unless in due time notified not to do so.   But the
check so drawn does not give authority to the bank to pay
to any other person; and if the bank fails to follow the
direction specified in the check, and assumes to pay to
some one else, it does so at its own risk.   When the payee's
name indorsed on the check is a forgery, and the check
is paid on such forged indorsement, it is not a payment to
the order of the payee.   The general rule referred to is

recognized by the defendant, but it contends that this case presents an exception to the rule, in that it shows such negligence on the part of the drawer as to preclude his recovery in this action. We have already noticed that the check was drawn payable to W. A. Dunbar, but was handed to C. J. Smith, a real estate agent, who was assuming to represent Dunbar, although in fact, he had no authority whatever to do so. The party (Dunbar) for whom Smith was pretending to act, and the party (plaintiff) from whom the money was being obtained, were not brought together. They did not meet; but the negotiations were wholly between Smith, the real estate agent, on the one side, and the plaintiff, on the other. The making of loans in that manner was a common and ordinary practice in Salt Lake City. At the time of this transaction, nothing had appeared against the character of Smith, the real estate agent, and the plaintiff followed an ordinary course of business men. He used ordinary care. No greater care was required of him. He made the check payable to Dunbar. The fact that he handed it to Smith to be delivered to Dunbar was not, under the circumstances, negligence on his part. We see no reason whatever to say that the general rule should not apply in this case. The facts do not warrant us in saying that it is an exception thereto. In paying the money on the forged indorsement, it paid out its own money, not that of the drawer. The money of the drawer still remained in the bank subject to his order: *Bank* v. *Whitman,* 94 U. S., 347; *Bank* v. *Morgan,* 117 U. S., 112, 6 Sup. Ct. Rep., 657; *Bank* v. *Bank,* 91 N. Y., 111.

It is further contended by the defendant that the plaintiff was negligent in not discovering the forgery earlier than he did; that for such purpose he should have made an early and thorough examination of the pass-book and the returned checks. The supreme court of the United States on speaking upon this subject in the case of *Bank* v. *Morgan,* 117 U. S., 107, 6 Sup. Ct. Rep., 660, said: "The drawer was not presumed to know the signature of the payee. His examination of the account would not necessarily have disclosed the forgery of the payee's

name.   Therefore his failure to discover that fact sooner
than he did was not to be attributed to want of care."
And, again, in the same case, (page 117,) the court said:
"As the depositor was not presumed to know, and as it
did not appear that he in fact knew, the signature of the
payee, it could not be said that he was guilty of negli-
gence in not discovering, upon receiving his pass-book,
the fact that his clerk, or some one else, had forged the
payee's name in the indorsement."   In the case at bar
there is nothing to show that the drawer knew the signa-
ture of the payee of the check; and, if not, an examina-
tion of the returned checks and the pass-book would not
have disclosed to him the forgery.   But the supreme
court of the United States, in the same case, further said:
"Of course, if the defendant's officers, before paying the
altered checks, could, by proper care and skill, have de-
tected the forgeries, then it cannot receive a credit for
the amount of those checks, even if the depositor omitted
all examination of his account."   The evidence clearly
shows, in the present case, that the officers of the defend-
ant before paying the check, could with proper care have
discovered the forgery of the payee's name on the check.
They had Dunbar's genuine signature in the bank, and
accessible.   From the evidence it is manifest that, had
they made a comparison between the genuine signature
in their possession and the signature on the check, the
forgery would have been detected.   A simple inspection
satisfied the cashier of the forgery at a subsequent date,
and no doubt would have done so at the time the check
was presented.

It is further said that the plaintiff was negligent in not
tendering back to the bank the check immediately upon
the discovery of the forgery, instead of waiting 24 days
thereafter.   The evidence shows that the plaintiff immed-
iately, upon the same day that the forgery was discovered,
went to the bank, and notified it of the discovery of the
forgery, and that he would hold the bank responsible,
and at the same time threatened suit; but, at the request
of the bank, he delayed action.   The bank having failed
to pay, he, unwilling to longer delay, on the first of De-

cember made a formal offer of the check to the bank. If it was necessary for plaintiff to have tendered back the check, such tender within a reasonable time was sufficient. *Cooke* v. *U. S.*, 91 U. S., 402; *Schroeder* v. *Harvey*, 75 Ill., 639; *Ellis* v. *Trust Co.*, 4 Ohio St., 662; 2 Daniel, Neg. Inst. sec. 1372. There could not be said to have been an unreasonable delay in this case, as whatever delay occurred was attributable to the defendant itself. If, however, the plaintiff was negligent in tendering back the check, the fact would not justify the defendant in refusing to pay the money to the plaintiff until it should show some actual damage caused thereby: *U. S.* v. *Bank*, 6 Fed. Rep., 853; *Bank* v. *Bank*, 91 N. Y., 110; *Welch* v. *Goodwin*, 123 Mass., 71. By the introduction of the evidence as to the solvency of Walker Bros., it was made clear that no damage could result to the defendant by reason of having lost his recourse, or the advantage of it. The introduction of that evidence was objected to as not upon any issue in the case. It was claimed that the defendant was injured by the negligence of the plaintiff in discovering the forgery and in notifying the bank. This evidence shows that they had lost nothing as to a recourse upon the parties to whom the bank had paid the money. We do not see that the evidence was improper.

It is objected that the testimony of L. S. Hills, as to the signature of Dunbar, was improperly admitted as evidence. The witness said that his experience in determining the genuineness of signatures, or in comparing of handwriting, from his duties in the bank, had gone to the extent that he could determine, from a comparison of handwritings, whether the signature was genuine or not. We think sufficient foundation was laid for the introduction of the testimony. The evidence, however, was made immaterial by the subsequent testimony of Dunbar himself as to the signature being a forgery.

The sixth instruction asked by the defendant was properly refused. If it were proper for the court to give expression to an opinion of the facts, the expression evidently would have been to the contrary of that set forth

in the instruction; but, upon the whole case, we think the law was properly submitted to the jury.

We see no error in the record, and the judgment and the order overruling the motion for a new trial are affirmed.

ZANE. C. J., and HENDERSON, J., concurred.

The appellant thereupon filed a petition for rehearing, upon which the following opinion was delivered, denying the rehearing.

BOREMAN, J.:

This is an application for a rehearing based upon a variety of grounds. Much of the petition is devoted to a summary of facts given in the opinion filed a few days since. The petition sets forth that the court erred in saying that on the 10th of November, 1884, C. J. Smith "was acting as a broker in obtaining and making loans upon real estate security." This was an incidental statement of fact, and one not at all necessary to a decision of the case. Indeed, it, and the whole statements of facts, might have been omitted entirely, and the omission would have not changed the ruling, or affected it in any way. The statement was not a finding of facts, but a mere summary. But, in truth, the whole evidence goes to show that, at that time, Smith was a real estate agent; and that real estate agents were in the habit of making loans upon real estate security. The court cannot look at the case from a stand-point on the one side or the other, but must look at it from both sides; or, more correctly speaking, from neither side, but from the stand-point independent of both sides.

The petition again says that there is no evidence that the way in which Smith transacted this business with Brixen "was a common and ordinary practice in Salt Lake City." or that this "manner of transacting the business was not uncommon." The testimony of Mr. Gillespie and Mr. Pomeroy, especially the latter, shows this statement to have been correct. Mr. Pomeroy says that very frequently the real estate agents conducted the transaction

themselves, without the principals coming together. But whether there was such a custom or not is a question not vital to the case. Take the facts entirely aside from the matter of a custom, and we cannot see that Brixen was guilty of negligence in putting the check into the hands of Smith, who was assuming to act for Dunbar; and at that time Smith's character was not known to be bad. Brixen acted as an ordinary prudent man would have done. The bank was completely guarded by the check being made payable to the order of Dunbar.

The appellant (defendant) objects to the following language used in the opinion filed, in speaking of the note and mortgage: "They appeared to have been duly executed." The court did not mean to say that the papers were "duly executed," but simply Brixen found no objection to them; that to him they appeared to have been duly executed. Evidence is not alone what a witness may say, but sometimes his acts are aids. Brixen accepted the deed, and his actions cannot be explained upon any other assumption than that everything about the papers appeared to him to be regular. The court did not pretend to pass upon the question as to whether or not the note and mortgage were "duly executed," and it is hard to understand how counsel could form such a conception from the language used.

The appellant urges, as a ground for the granting of a rehearing, that the court erred in holding "that, notwithstanding Brixen neglected to examine the accounts stated to him by the bank from time to time, he ought to recover, because the bank could have and should have discovered the forged signature of Dunbar." It urges that the bank was under no obligation to the drawer to examine the payee's name to ascertain whether it was forged or not. This point was thoroughly considered upon the hearing of the case, and in the opinion delivered. We have examined with some care the authorities cited by appellant, but they fail to convince us that the fault was not with the bank. The bank was bound to know the signature of the payee. It was not authorized to pay to anybody but the payee or to his order. It paid without his order. The appellant

conceives that "the court was wholly mistaken in holding that the evidence in the record showed that the delay in returning the forged check by Brixen to the bank, and the delay in demanding payment by Brixen of the forged check from the bank, was caused by the bank." We reiterate, after further examination, that the bank was wholly to blame for the delay. Brixen was frequently pressing his claims for a settlement of the matter — a payment of the amount due; told the bank, immediately upon a discovery of the forgery, that he held it responsible and threatened suit. The bank requested delay. Such requests for delay could not well be construed to mean anything else than a delay to take any action looking to a suit. If the delay had not been requested and granted, the suit itself, and consequently all preliminary steps thereto, would have been taken immediately upon the discovery of the forgery. They were not done, simply because the bank requested delay by plaintiff in taking action.

The appellant complains of the language used by the court in holding that, as Walker Bros. were shown to have been pecuniarily responsible, "no damage could result to defendant by reason of having lost its recourse, or the advantage of it," against the forger, Smith. The court made no reference to recourse by the bank upon Smith. The bank could look to Walker Bros., who had indorsed it to the bank, and, Walker Bros., being solvent, the bank was not damaged. The law will not presume damage when it clearly appears that there could have been none.

The appellant asks for a rehearing upon the further ground that the court made use of language as follows: "The sixth instruction . asked by defendant was properly refused. If it were proper for the court to give expression to an opinion of the facts, the expression evidently would have been to the contrary of that set forth in the instruction." The objection to this language is that it appeared therefrom that the court was under the impression that, in the sixth instruction asked by defendant, the defendant was asking the court to give an opinion upon matters of evidence from the witnesses, when the defend-

ant was simply asking the court to state the admissions in the complaint, and the effect thereof, and that the instruction was correct, etc. The complaint stated facts sufficient to constitute a cause of action. This seems to be admitted; no point being pressed in regard thereto. There were no admissions in the pleadings that there was no good reason for delay in returning the forged check. The complaint simply failed to allege the reasons. The proof was made of the reasons for the delay, and no objections were made to such proof. Under that state of the case, it would not have been proper for the court to have told the jury that they must find a verdict for the defendant. It was not a case of facts being admitted by the pleadings. A failure to allege a fact in the complaint, especially if no exception is taken to such failure, will not authorize the court to tell the jury that the contrary is admitted, when the fact itself has been proved before the jury.

Upon the hearing of this case, we gave it a careful consideration. And this review, upon the points made by the petition for a rehearing, confirms the view we arrived at then. The application for a rehearing is denied.

ZANE, C. J., and HENDERSON, J., concurred.