NATIONAL CITY BANK OF CHICAGO, ILL., v. THIRD NAT. BANK OF LOUISVILLE, KY.

(Circuit Court of Appeals, Seventh District.   January 4, 1910.)

No. 1,621.

1. BANKS AND BANKING (§ 190*)—PAYMENT OF FORGED DRAFT—LIABILITY TO DRAWER.

Where the drawee of a bank draft paid it on the forged indorsement of the payee's name by a person having no property in the draft or right to indorse the payee's name, proof of such facts establishes a cause of action against the drawee, on behalf of the drawer, under the rule that it is the drawee's duty to pay the draft only to the payee, or to some one who by indorsement or otherwise has good title, or as to whom plaintiff is estopped to deny title.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 733–735; Dec. Dig. § 190.*]

2. BANKS AND BANKING (§ 129*)—DEPOSITS—OWNERSHIP.

B. solicited P. to obtain a loan of $20,000 to finance a publishing proposition, agreeing to pay a bonus of $5,000 therefor. B. executed notes for the amount, part of which was deposited to the credit of a special bank account under the agreement that it should be withdrawn only on checks countersigned by P. *Held*, that the relation of the parties was that of borrower and lender only, and that P. had no interest in the deposit either as a partner in the publishing enterprise or as a tenant in common of the fund.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 312; Dec. Dig. § 129.*]

3. BANKS AND BANKING (§ 190*)—DEPOSITS—DRAFTS—INDORSEMENT—FORGERY.

Where a special deposit of borrowed money in a bank was subject to the borrower's check only when countersigned by the lender, as a matter of law, had power to limit the payment of the borrower's check on the fund or draft purchased with such check to a particular person, and hence the borrower's indorsement of the payee's name on the back of the draft so purchased, without authority, constituted a forgery, and passed no title to the holder, nor did it authorize the drawee bank to charge the draft to the drawer's account.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 733–735; Dec. Dig. § 190.*]

4. BANKS AND BANKING (§ 190*)—PAYMENT OF FORGED DRAFT—NEGLIGENCE.

P., having loaned money to B., deposited in a special bank account sub-

ject to checks only when countersigned by P., countersigned a check on the deposit to purchase a draft payable to the B. M. Company. B. purchased the draft, and, forging an indorsement of the B. M. Company, deposited it to the credit of his personal account in another bank, by which it was collected from the drawee and charged to the drawer's account. *Held*, that the drawer was entitled to rely, in the absence of notice that its reliance was misplaced, on the assumption that the drawee would not pay the draft on such forged indorsement, and hence neither the drawer nor P. were chargeable with any negligence that misled or contributed to misleading either the bank in which the draft was deposited after forgery, or the drawee in paying the draft on such indorsement.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 733–735; Dec. Dig. § 190.*]

5. BANKS AND BANKING (§ 190*)—PAYMENT OF FORGED PAPER—CUSTOM.

In an action by the drawer of a draft against the drawee for payment on a forged indorsement, a custom of banks to accept items for deposit bearing the indorsement of payees on the responsibility of the depositor, without examining the genuineness of the indorsement or signature of the payee or person other than the depositor, was irrelevant as not going to the extent of exhibiting a custom that a failure to examine a title conferred a good title, or that a banker's reliance on a customer's indorsement of a bad title exempted the banker from liability on his own indorsement.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 733–735; Dec. Dig. § 190.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Third National Bank of Louisville, Kentucky, against the National City Bank of Chicago, Illinois. Judgment for plaintiff, and defendant brings error. Affirmed.

Defendant in error (hereinafter styled plaintiff) instituted against plaintiff in error (defendant) an action in assumpsit for money had and received. Defendant pleaded the general issue. At the conclusion of all the evidence, the court directed a verdict for plaintiff and thereupon rendered the judgment that is attacked by this writ of error.

To make its case plaintiff proved the following undisputed facts and rested: Throughout July, 1907, plaintiff had to its credit with defendant a general deposit exceeding $20,000. On July 8, 1907, plaintiff drew its draft upon defendant for $7,000 payable to the order of Bobbs-Merrill Company. That company, as plaintiff then knew, was a publishing corporation at Indianapolis, Ind. On July 9, 1907, through the Chicago Clearing House, defendant paid the draft to the Continental National Bank of Chicago, charged the amount against plaintiff's account, and at the end of the month returned the draft to plaintiff with other canceled vouchers. When defendant took up the draft the following writings appeared on the back thereof: "Bobbs-Merrill Co." "Ben La Bree, Jr." "All prior indorsements guaranteed, pay to the order of Continental National Bank, Chicago, Ill. Southern National Bank, Louisville, Ky. H. Thiemann, Cashier." The purported indorsement by Bobbs-Merrill Company was not made by that company, nor by its authority, nor with its knowledge or consent. Payment of the proceeds of the draft was never made to Bobbs-Merrill Company, nor to any one upon its order or with its authority, knowledge, or consent. Plaintiff first learned the aforesaid facts respecting the purported indorsement of Bobbs-Merrill Company on February 15, 1908. On that day plaintiff gave notice of said facts to the Southern National Bank of Louisville and to defendant. On February 18, 1908, plaintiff tendered back the draft to defendant and demanded that its deposit be restored and paid to it. Plaintiff has never received from defendant nor from any one the amount so as aforesaid taken by defendant from its deposit with defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Defendant, on its part, proved the following additional undisputed facts: About July 1, 1907, Ben La Bree, Jr., whose indorsement is on the draft in question, and who was engaged in selling subscription books at Louisville, applied to Powers, president of an insurance company and a director of plaintiff, for financial assistance to the extent of $15,000. He exhibited to Powers what purported to be contracts of sale amounting to over $37,000 (but which were forgeries, as Powers learned in January and February, 1908), and represented that he would have to have $15,000 to pay for printing, binding, etc., in order to enable him to make deliveries under the contracts. Among the papers so exhibited was what appeared to be a contract whereby Dana, Estes & Co. of Boston agreed to take from La Bree for $9,350 certain books as soon as they should be manufactured and delivered, and also what purported to be an undertaking of Bobbs-Merrill Company to manufacture said books for La Bree for $7,000. As an inducement for Powers to raise the $15,000 necessary for the aforesaid purposes, La Bree offered to execute his notes to Powers for $20,000 running from 60 to 120 days, and to give the collateral agreement hereinafter described. Powers thought favorably of the proposition; but, believing that it would be well to have aid in floating the $15,000 of La Bree paper, he proposed to McHenry, who was interested in various banks and was a director and vice president of plaintiff, that he would give McHenry a La Bree note for $2,500 (half of the $5,000 bonus in La Bree notes) if McHenry would join with him in raising the $15,000. Receiving McHenry's consent, Powers decided to go ahead. So on July 6, 1907, La Bree executed to Powers his notes for $20,000 as aforesaid, and a collateral agreement, as follows: After reciting the notes, La Bree sold, assigned, and delivered to Powers. in order to secure the payment of said notes, the contracts and choses in action so as aforesaid exhibited to Powers. The next provision was that: "The sum of $20,000 when as obtained from said Powers is to be deposited in the Third National Bank of Louisville, and checked out on checks countersigned by said Powers, and the account to be designated Ben La Bree, Jr., Special." And the next and final paragraph stipulated that: "Upon the completion and delivery of books under the contract of Dana, Estes & Co., the amount due under said contract is to be paid as per draft on them drawn this day and payable in ninety days or on completion of said contract, the proceeds of said draft to be applied towards the extinguishment of the above mentioned indebtedness. Collections under the other contracts may be made as hereafter agreed upon between the parties." La Bree notes to the amount of $15,000 were indorsed by Powers and given to McHenry to negotiate. McHenry explained the La Bree-Powers arrangement to the discount committee of plaintiff's directors, and plaintiff took $5,000 of the notes on McHenry's guaranty that the notes should be paid. In like manner McHenry placed $10,000 of the notes with other banks. And thereupon $15,000 so raised was deposited with plaintiff to the credit of "Ben La Bree, Jr., Special." On July 8, 1907, La Bree signed and brought to Powers for counter signature a check for $7,000 on the aforesaid deposit, payable "to the order of New York Exchange," and represented to Powers that it was necessary to pay Bobbs-Merrill Company in advance in order to secure the manufacture of the books that were to be delivered to Dana, Estes & Co. Powers interlined in the check after the word "Exchange" the words "payable to Bobbs-Merrill Co.," and thereupon countersigned the check and delivered it to La Bree. On presentation of the check by La Bree, plaintiff executed and delivered to La Bree its draft on defendant for $7,000, payable to the order of Bobbs-Merrill Company, being the draft introduced in evidence by plaintiff as hereinabove stated. La Bree wrote "Bobbs-Merrill Co." and his own name on the back of the draft, presented it to the Southern National Bank of Louisville (where he had an account), and received therefor from that bank $7,000, which he converted to his own use. Before plaintiff made its demand upon defendant and began this action, plaintiff restored $7,000 to the "Ben La Bree, Jr., Special" account, and therefrom Powers paid that amount of La Bree notes on which he was indorser.

Defendant also proved that at the end of each month after July and down to December, 1907, when the account was closed, defendant and plaintiff compared their books by means of reconcilement sheets, and that plaintiff made

no complaint during the pendency of the account that defendant had wrongly paid the draft in question.

Defendant also introduced evidence from which the jury might have found that Powers, about the middle of November, 1907, came into the possession of facts, which, if followed up at once, would probably have led to an earlier detection of La Bree's fraud. During November, 1907, down to the 16th, La Bree had on deposit with the Southern National Bank $1,200; after the 16th his "balance never reached $500."

Errors are assigned:

On the direction of verdict for plaintiff.

On the refusal to give several instructions, based on the theory that title to the draft passed to the Southern National Bank and thence to defendant, of which the following may be taken as an example: "If you believe from the evidence that Bobbs-Merrill Company had no interest in the draft in question, or claim or title thereto, and if you further believe from the evidence that said draft was delivered to Ben La Bree, Jr., in payment of a check for the same amount drawn against an account deposited with the plaintiff by said Ben La Bree, Jr., and that the money deposited in said account was either the joint property of said La Bree and Powers, or the sole property of said La Bree, then you are instructed that the indorsement of Bobbs-Merrill Company was not necessary in order to transfer a good title to said draft, and your verdict should be for the defendant."

On the refusal to give several instructions, based on the theory that plaintiff's negligence under the facts proven should prevent a recovery, of which the following may be taken as an example: "The jury are instructed that it was the duty of the plaintiff within a reasonable time after the return of the draft to it by the defendant to use diligence in discovering the forgery, and if you believe from the evidence that the forgery might have been discovered by the plaintiff by the use of due diligence within a reasonably short time after the return of the draft by defendant to plaintiff, and if you further believe from the evidence that the defendant was damaged or injured by such lack of diligence, if you believe from the evidence there was such lack of diligence, then your verdict should be for the defendant."

On the refusal to give several instructions, based on the theory that plaintiff was answerable for negligence on the part of Powers, of which the following may be taken as an example: "If you believe from the evidence that Powers did not exercise care and prudence in dealing with said La Bree, and that Powers failed to exercise due care and precaution in countersigning and delivering said check for $7,000 to said La Bree, or if you believe from the evidence that Powers might have discovered the forgery by the use of reasonable diligence within a reasonably short time after the return of the draft by the defendant to the plaintiff, and that the defendant was thereby prevented from taking steps for its protection against said La Bree and was damaged or injured thereby, then your verdict should be for the defendant."

On the rejection of proffered testimony "that Bobbs-Merrill Company never had an account with the Southern National Bank of Louisville; that its signature was not known at that bank; that La Bree had an account with that bank for about 18 months prior to July, 1907; that it was the custom of bankers of Louisville, when customers brought in items of deposit consisting of checks and drafts which bore the indorsement of payees or other parties to said instruments, to accept the same for deposit upon the responsibility of the depositor and without examination of the genuineness of the indorsement or signature of the payee or other person other than the depositor."

Albert Martin and Bennett H. Young, for plaintiff in error.

Frank A. Helmer and James P. Gregory, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). It was defendant's duty under the law to pay plaintiff's draft only to the payee, or to some one who by indorsement or otherwise had good title

or as to whom plaintiff was estopped to deny title. Plaintiff's undisputed evidence made out its case. The question is whether defendant's evidence tended to establish a defense. We have been unable to imagine any theory in addition to those advanced by defendant.

1. La Bree's indorsement of the payee's name was authorized, so defendant says, because La Bree was either sole owner of the fund with which the draft was bought, or joint owner with Powers as partner or tenant in common.

La Bree's arrangement with Powers gave Powers no interest in common with La Bree as partner or otherwise in the property or funds at hazard in the subscription book business. Powers was not to be a sharer in the profits or losses of the business. The relation of Powers to La Bree was limited to that of lender to borrower. The $5,000 was a bonus for the loan of $15,000. It represented in no way an interest in the profits of the enterprise in which La Bree was supposed to be risking the borrowed money. And La Bree's obligation to pay the $20,000 according to the tenor of his notes was not at all dependent upon the success or failure of the project.

Though La Bree was sole owner of the fund with which the draft was bought, it does not follow that he had an unrestricted dominion. For instance, he was sole owner of the Dana, Estes & Co. contract (supposing for the moment that it was valid), but he did not have unrestricted dominion, because he had given the right of collection to Powers. And likewise, with respect to the deposit with plaintiff, he had given the right of application to Powers. By force of the contract (as a matter of law) Powers had just as much right to limit the payment of that $7,000 (both in the check and in the draft) to Bobbs-Merrill Company as he had to make the collection from Dana, Estes & Co.

So La Bree's indorsement of the payee's name was a forgery, passing no title to the Southern National Bank, and conferring no right on defendant to charge the draft to plaintiff's account.

2. Too obviously to warrant discussion neither plaintiff nor Powers was guilty of any act or omission that misled or contributed to misleading the Southern National or defendant into taking the draft on a forged indorsement.

The charge of subsequent negligence respecting the discovery of the forgery is unavailing. Plaintiff had the right to rely, in the absence of notice that its reliance was misplaced, upon the assumption that defendant would perform its legal duty. It was not for plaintiff to assume the contrary and to search through its canceled drafts for forged indorsements. Kearny v. Met. Trust Co., 110 App. Div. 236, 97 N. Y. Supp. 274; Id., 186 N. Y. 611, 79 N. E. 1108; German Savings Bank v. Citizens' Nat. Bank, 101 Iowa, 530, 70 N. W. 769, 63 Am. St. Rep. 399; Harter v. Mechanics' Nat. Bank, 63 N. J. Law, 578, 44 Atl. 715, 76 Am. St. Rep. 224; Critten v. Chemical Nat. Bank, 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529. Owing no duty, plaintiff could not be guilty of negligence in that regard. And Powers was one step farther removed from the draft.

Even if plaintiff and Powers owed defendant the duty to use diligence in discovering that defendant had paid the draft on a forged in-

dorsement, the result in this case would be unaffected. There is no evidence tending to prove that, if the utmost diligence had been used, defendant (or the Southern National) could have done more than make a partial recoupment of the loss. Not by plea, nor by proffered instruction, nor in any way, did defendant tender the question of a partial defense and concede to plaintiff a partial recovery.

3. Proof of the Louisville custom was irrelevant. Aside from the question of the power of a custom in one city to affect the law merchant, the offer did not go to the extent of exhibiting a custom that a failure to examine a title conferred a good title, and that a banker's reliance upon his customer's indorsement of a bad title exempted the banker from liability on his own indorsement.

The judgment is affirmed.