### NATIONAL BANK OF COMMERCE v. FISH et al.

No. 3553—Opinion Filed May 9, 1916.

On Rehearing, Dec. 11, 1917.

(169 Pac. 1105.)

**1. Appeal and Error — Harmless Error — Exclusion of Evidence.**

Prejudicial error cannot be predicated upon the rejection of immaterial testimony.

**2. Appeal and Error—Party Entitled to Allege Error — Sustaining Demurrer as to Codefendant.**

Where plaintiff in error interposes a demurrer to the evidence in behalf of its co-defendants as well as for itself, and the demurrer is sustained as to its codefendants, it is in no position to complain.

**3. Banks and Banking—Check—Payment— Liability.**

When a depositor issues his check upon his bank payable to payee or order, it is the duty of the bank to pay same to the person named in said check or upon his genuine indorsement, and a failure so to do is at the peril of the bank.

**4. Same—Payment on Forged Indorsement.**

Where a bank pays the check of its de-

positor upon a forged indorsement, it has no right to charge same against the account of the depositor, but must look to its remedy upon the guaranty of the paying bank or other intermediate indorsers, unless the depositor has been guilty of negligence which induced the bank to pay, or having learned of such forgery in time that notice to the bank would have saved it the loss and failed so to notify it, or was guilty of other conduct constituting an estoppel.

### 5. Same—Recovery—Evidence.

Evidence examined, and held insufficient to establish a defense in favor of plaintiff in error.

(Syllabus by Day, C.)

Hardy and Kane, JJ., dissenting.

Error from Superior court, Logan County; S. S. Lawrence, Judge.

Action by C. O. Fish against the National Bank of Commerce, the Pauls Valley National Bank, and the First National Bank of Wynnewood. Judgment in favor of other defendants, and for plaintiff against National Bank of Commerce, and it brings error. Affirmed.

Devereux & Hildreth, for plaintiff in error.

Tibbetts & Green, for defendants in error.

Opinion by DAY, C. C. O. Fish was engaged in the farm loan business at Guthrie, and was a regular depositor of the National Bank of Commerce. It seems that Fish had an arrangement with one J. V. Graham, of Pauls Valley, Okla., whereby Graham would procure applications for farm loans and forward to Fish, and after approving the applications and receiving the notes, mortgages, and abstracts, with a draft of the borrower drawn in favor of Fish, Fish would negotiate the loans and deposit the draft for collection with the National Bank of Commerce, and thereafter forward to the borrower his individual check drawn on said Bank of Commerce.

Fish received from Graham applications, promissory notes, and mortgages purported to have been executed by three different husbands and wives respectively, which mortgages purported to bear the file marks of the register of deeds showing due recordation and purported to have been acknowledged by each respective husband and wife before said J. V. Graham as notary public, and at the same time received drafts drawn in favor of Fish on his Chicago correspondent by each borrower for the amount of his respective loan.

Upon receipt of these loans Fish sold them to his Chicago correspondent, indorsed the drafts, and deposited the proceeds to his credit in the National Bank of Commerce, and thereafter drew his individual checks on said bank in favor of each borrower for the amount of his loan, and forwarded the same by mail to the said Graham at Pauls Valley to be delivered to the respective borrowers who resided in that vicinity. When Graham received the checks, instead of delivering them to the borrowers, he forged the indorsement of the respective payees thereon, and then wrote his indorsement thereunder, and then presented two of these checks to the Pauls Valley National Bank of Pauls Valley, and the other to the First National Bank of Wynnewood, and received the money thereon. Upon cashing these checks these banks indorsed them and guaranteed all prior indorsements, and in due course they were returned to the National Bank of Commerce at Guthrie through Kansas City, each bank in turn placing its indorsement upon them. The National Bank of Commerce paid the checks and charged the same to the account of Fish, and in due time returned same to him as paid checks. Something like two years after the loans were made and the checks cashed it was discovered that the entire transaction was a forgery; that Graham had forged the names of the purported borrowers to the notes, mortgages, drafts, and checks. Some months before the discovery of the forgeries Graham had absconded leaving no property.

Shortly after these forgeries were discovered Fish instituted suit against the three banks seeking to hold the National Bank of Commerce and the Pauls Valley National Bank for two of the checks, and the National Bank of Commerce and the First National Bank of Wynnewood for the other.

The cases by agreement were consolidated, and upon the trial of the cause, when plaintiff had rested his case, the court sustained a demurrer to the evidence as to the Pauls Valley National Bank and the First National Bank of Wynnewood, and at the close of all the testimony instructed the jury to return its verdict in favor of Fish against the National Bank of Commerce for the amount of the three checks aggregating something over $3,700, and from such verdict and judgment, the National Bank of Commerce appeals, making C. O. Fish and the other two banks parties defendant in error.

Plaintiff in error directs his complaint chiefly to questions he contended are ma-

terial error as follows: The exclusion of testimony, the sustaining of the demurrer to the evidence as to the Pauls Valley National Bank and the First National Bank of Wynnewood, and the directing of the verdict for plaintiff. We shall discuss these questions in the order stated.

Plaintiff in error offered to prove that at a time subsequent to these forgeries that officers of the Pauls Valley National Bank wrote to Mr. Fish to the effect that they desired, in the light of recent developments as to the business methods of Graham, to revoke letters of recommendation formerly furnished him by them, and that Mr. Fish replied to this letter saying that Mr. Graham had been his agent down there for nearly two or three years, that Graham's business had been very profitable to him, and that he was honest and straight, and that the banks did not have any reason to write such a letter, etc. We think this testimony immaterial for the reason that it was a transaction occurring subsequent to the forgeries, and for the further reason that it does not tend to contradict Fish's testimony that he had confidence in Graham, but tends to corroborate rather than impeach it.

The record discloses that one of the attorneys for plaintiff in error interposed the demurrer to plaintiff's evidence on behalf of plaintiff in error and Paul's Valley National Bank and the First National Bank of Wynnewood, its codefendants, and this demurrer was sustained by the court as to said codefendants. Since the trial court did the very thing requested by plaintiff in error, it is in no position to complain.

The relation between bank and depositor is that of debtor and creditor. When a depositor issues his check upon his bank payable to payee or order, it is the duty of the bank to pay same to the person named in said check or upon his genuine indorsement, and a failure so to do is at the peril of the bank. Jordan, Marsh & Co. v. National Shawmut Bank, 201 Mass. 397, 87 N. E. 740, 22 L. R. A. (N. S.) 250; Union Biscuit Co. v. Springfield Grocery Co., 143 Mo. App. 300, 126 S. W. 996; Jackson et al. v. National Bank of McMinnville, 92 Tenn. 154, 20 S. W. 802, 18 L. R. A. 663, 36 Am. St. Rep. 81.

The reason for this rule is readily apparent. The depositor cannot know the signatures of the persons to whom he issues checks, and is not called upon nor expected to identify the payee or his signature;

while, on the other hand, the bank may decline to pay until sufficient proof of the identification is furnished. It is, of course, impractical for banks at all times to require proof of the genuineness of the payee's indorsement, so a custom has arisen among banks that requires the bank cashing the check in the first instance to indorse same guaranteeing all prior indorsements, and, relying upon this guaranty, the bank of deposit pays without further question, and in the event same has been paid upon a forged indorsement the bank of deposit has no right to charge same against the account of the depositor, but must look to its remedy upon the guaranty of the paying bank or other intermediate indorsers. Unless, of course, the depositor has been guilty of negligence which induced the bank to pay, or having learned of the forgery in time that notice to the bank would have saved it the loss and failed to so notify it, or was guilty of other conduct constituting an estoppel. 5 Cyc. 548; Zane on Banks and Banking, pp. 266-270; Hatton v. Holmes, 97 Cal. 208, 31 Pac. 1131; Atlanta Nat. Bank v. Burke, 81 Ga. 597, 7 S. E. 728, 2 L. R. A. 96; Murphy v. Metropolitan Nat. Bank, 191 Mass. 159, 77 N. E. 693, 114 Am. St. Rep. 595; Chipman et al. v. Bank of New York, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 845; Armstrong v. Pomeroy Nat. Bank, 46 Ohio St. 512, 22 N. E. 866, 5 L. R. A. 625, 15 Am. St. Rep. 655; National City Bank v. Third Nat. Bank, 177 Fed. 136, 100 C. C. A. 556.

The only allegation and proof of negligence against Fish was the sending of the checks to Graham instead of to the payees, and the failure of Fish to examine the checks when returned to him by the bank. The checks were sent to Graham for delivery to the payees, and Fish had a right to presume that such would be done, and we can see no negligence in this. Fish was not presumed to know the signatures of the payees, nor did it appear that he, in fact, knew, so that an examination of the checks after their return to him would not have disclosed the forgeries, so we can see no want of care in that regard. German Savings Bank v. Citizens' Nat. Bank, 101 Iowa, 530, 70 N. W. 769, 63 Am. St. Rep. 399; First National Bank v. Tappan, 6 Kan. 456, 7 Am. Rep. 568; Brixen v. Deseret Nat. Bank, 5 Utah, 504, 18 Pac. 43; Grand Lodge, A. O. U. W., v. State Bank, 92 Kan. 876, 142 Pac. 974, L. R. A. 1915D, 815.

The record further discloses that Fish learned of the forgeries some two or three

months prior to his informing plaintiff in error thereof, but prior to his learning of the forgeries Graham had absconded, leaving no property. That being true, notice would have been without avail, and we are unable to see wherein Fish failed in any duty in this.

Plaintiff in error alleges in its answer that it paid these checks relying upon the guaranty of its codefendants, and if the indorsements of the payees had not been guaranteed by some responsible person, it would not have paid them, and, that being true, its recourse was on said guaranties. Harmon v. Old Detroit Nat. Bank, 153 Mich. 73, 116 N. W. 617, 17 L. R. A. (N. S.) 514, 126 Am. St. Rep. 467.

From a careful examination of the evidence, we are convinced that it was insufficient to have supported a verdict for plaintiff in error, and the trial court did not err in directing a verdict for defendant in error.

Finding no error, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

### On Rehearing.

TURNER, J. For reversal it is again urged that the court erred in excluding evidence offered by defendants to prove that, by letter dated February 12, 1909, certain parties connected with defendants Pauls Valley National Bank and the First National Bank of Wynnewood had made certain charges (undisclosed by the record) against Graham, and had notified Fish that they desired to withdraw former letters recommending Graham to him, and that Fish replied, in effect, that Graham had been his agent for two or three years; that his business had been profitable; that he was honest and straight; that the banks had no reason for writing such a letter; and that, unless they made good their charges, they might get into trouble. There was no error in excluding this evidence, although this was on cross-examination of Fish, who, on direct examination had testified, over defendant's objection, that he had full confidence in Graham's integrity; this for the reason that the pleadings did not raise the issue of the negligence of Fish in retaining Graham as his agent during the time the forgeries were committed, and hence such evidence was without the issues and irrelevant and immaterial. We say that such testimony was without the issues; for, turning to the pleadings, they disclose that, to escape liability, it was alleged only that after the Spain check had been paid by the drawee bank the same was re-turned to plaintiff about March 1, 1908, that plaintiff failed to notify said defendant that the indorsement thereon was forged until December, 1909, and that in the meantime Graham had removed himself and his property out of the county and placed it beyond the reach of said bank. All of which was denied by plaintiff, who alleged that said removal took place long before he discovered the forgery. Such being the state of the pleadings, we fail to see how this letter and the reply thereto, if admitted in evidence, could tend to even put plaintiff on his guard that one or more of his canceled checks contained the forged indorsement of Graham, much less tend to support the allegation that, after he knew it, he failed to notify the payee bank, and thereby deprived it of an opportunity to protect itself.

It is next contended that this court, having all the facts before it, "should render a proper judgment, which should run, first, against the banks which accepted and paid the checks with the forged indorsements, thus making them primarily liable, with a secondary liability upon the National Bank of Commerce." But the state of the record will not permit us to do so, if we were otherwise inclined, which we are not. Pertinent to this, the record discloses that at the instance of counsel for the National Bank of Commerce the trial court sustained a demurrer to plaintiff's evidence in favor of the defendants Pauls Valley National Bank and First National Bank of Wynnewood, but overruled it as to the National Bank of Commerce, and rendered judgment, in effect, that plaintiff take nothing as against the former, but have judgment against the latter bank, which alone complains and brings the case here. Now, as to do as requested by counsel would be, in effect, to hold that the court erred in sustaining counsel's own demurrer, we decline. Besides, as Rev. Laws 1910, § 4118, provides, "As respects one another, indorsers are liable prima facie in the order in which they indorse," which is in keeping with the general rule stated in 4 Am. & Eng. Enc. Law, 483, thus, "In respect to the liability of the indorsers inter se, the rule is that they are prima facie liable to each other in the order in which their indorsements successively appear, each indorser being liable to all succeeding indorsers, but not to preceding ones," it would seem that the order of liability should be the other way, and might have been had the National Bank of Commerce, in a cross-action against its codefendants, prayed for alternative relief in that, should plaintiff have judgment against it for the amount of

his loss, it have judgment over against them as prior indorsers of the checks for the amount of its loss; but such relief, not having been prayed and these codefendants thereby given their day in court to defend against an action over against them, we cannot render such judgment against them here.

There is no merit in the remaining contentions.

• All the Justices concur, except HARDY and KANE, JJ., who dissent.