NICHOLAS C. HARTER ET AL., DEFENDANTS IN ERROR, v. MECHANICS NATIONAL BANK OF TRENTON, PLAINTIFF IN ERROR.

Submitted July 12, 1899—Decided November 20, 1899.

1. The implied contract on the part of a bank with its depositor is that it will disburse the money standing to his credit only on his order and in conformity with his directions, and therefore, if it makes a payment on a check to which his name has been forged, or upon his genuine check to which the name of a necessary endorser has been forged, it must be held to have paid out of its own funds, and cannot charge the amount against the depositor, unless it shows a right to do so on the doctrine of estoppel or because of some negligence chargeable to the depositor.

2. The return to a depositor of his check with a forged endorsement, together with his balanced pass-book, casts on him only the duty of exercising reasonable care and diligence to examine the vouchers and the account as stated by the bank and to inform the bank of any errors thus discoverable.

3. A delivered to the plaintiffs a sum of money to be paid to B; the plaintiffs gave to C for B their check on the defendant bank, in which they were depositors, for the amount, payable to the order of B; C forged B's name on the back of the check, and thus obtained the money from the bank. *Held,* in an action by the plaintiffs to recover from the bank the balance of their deposits, that the bank would not be entitled to charge the check against the plaintiffs, on showing that A had lost his right of action against the plaintiffs for the money which he had delivered to them.

On error to the Supreme court.

For the plaintiff in error, *William M. Lanning.*

For the defendants in error, *Frank S. Katzenbach, Jr.*

The opinion of the court was delivered by

DIXON, J. The facts constituting the plaintiffs' side of this case were as follows: On January 29th, 1898, Samuel J. Kelly gave them his check for $1,000 and directed them to pay the amount to Kate Young on delivery of her bond and mortgage to Howard M. Richards. On the same day a bond and mortgage purporting to be made by Miss Young to Richards were delivered to the plaintiffs by Le Roy Applegate, a lawyer in whose office Miss Young was employed as a stenographer, and thereupon the plaintiffs gave to Applegate their check on the defendant bank, in which they were depositors, for $985, payable to the order of Miss Young. Applegate had forged Miss Young's signature on the bond and mortgage, and he also forged her signature on the back of the check, making it payable to his own order, and, he having added his own endorsement, the bank paid it to him. On February 11th, 1898, the bank balanced the plaintiffs' pass-book and returned to them this check as one of the vouchers, but the plaintiffs, not being acquainted with Miss

Young or her signature, did not then discover the forgery; nor were they informed of it until November, 1898, when they promptly notified the bank. Having then demanded from the bank the amount of the check, they brought this suit to recover it.

There can be no doubt that, on these circumstances standing alone, the plaintiffs were entitled to the verdict which was ordered in their favor at the trial in the Mercer Circuit.

The relation between a bank and its depositor is that of debtor and creditor, and the implied contract on the part of the bank is that it will disburse the money standing to the credit of the depositor only on his order and in conformity with his directions. When, therefore, it makes a payment upon a check to which the depositor's name has been forged, or upon his genuine check to which the name of a necessary endorser has been forged, it must be held to have paid out of its own funds, and cannot charge the amount against the depositor unless it shows a right to do so on the doctrine of estoppel or because of some negligence chargeable to the depositor. 5 *Am. & Eng. Encycl. L.* (2d ed.) 1066 *et seq.*; *Shipman* v. *Bank*, 126 *N. Y.* 318; *United Security Co.* v. *Bank*, 40 *Atl. Rep.* 97 (*Pennsylvania Supreme Court*); *Myers* v. *Southwestern National Bank*, 44 *Id.* 280 (*Pennsylvania Supreme Court*).

Reference to the same authorities indicates that the return to the depositor of his check with a forged endorsement, together with the balanced pass-book, casts on him only the duty of exercising reasonable diligence and care to examine the vouchers and the account as stated by the bank, and to inform it of any errors thus discoverable. As, in the present case, the plaintiffs were not in fact acquainted with Miss Young's signature, and there is no ground for claiming that they ought to have known it, they did not fail in duty to the bank by not discovering the forgery on return of the check. Indeed, they were entitled to assume that the bank, before paying the check, had ascertained the genuineness of her apparent endorsement.

The *prima facie* case of the plaintiffs being thus made out, it remains to consider the grounds of defence.

It appeared in evidence that in June, 1898, Kelly, who had then become the owner of the bond and mortgage, called on Miss Young about the interest; that she then told him she knew nothing about such a mortgage; that that was the first she had heard of it, and that she would see Applegate next morning at his office; that on the next morning, at Applegate's office, Kelly first had an interview with Applegate, then the latter had an interview with Miss Young, and immediately afterwards Miss Young told Kelly that it was all right and Mr. Applegate was going to settle it soon.

On this evidence the defendant insists, in the first place, that a question of fact for the determination of the jury was raised, whether Miss Young had not thus validated the bond and mortgage, and consequently the endorsement of the check. But we think her words and conduct are not reasonably capable of such a construction. Their manifest import is that the bond and mortgage were not executed by her, but that they placed an obligation on Applegate which she believed he would soon settle and so make the matter right. They give no sign of any sense of obligation or purpose of settlement on her part.

The defendant, secondly, insists that Kelly, by his failure to give to the plaintiffs prompt notice of the forgery, as to which he was at least put on inquiry by what Miss Young told him in June, 1898, had lost his right to recover from the plaintiffs the money which he had left with them to be paid to Miss Young for her bond and mortgage, and which had not been so paid, and thus the payment made to Applegate had become, as between Kelly and the plaintiffs, a constructive payment to Miss Young, and consequently should be deemed such a payment as between plaintiffs and the bank.

Whatever may be said of the equities of the situation thus presented, this roundabout imputation of negligence cannot prevail at law. The principle on which negligence may preclude a depositor from recovering of his bank the money paid

by the bank on a forged check, is thus stated by Chief Justice Cockburn in *Swan* v. *N. B. Australasian Co.*, 2 *Hurlst. & C.* 175, 190: "The customer would be entitled to recover from the banker the amount paid on such a check, the banker having no voucher to justify the payment; the banker, on the other hand, would be entitled to recover against the customer for the loss sustained through the negligence of the latter. Possibly, to prevent circuity of action, the right of the banker to immunity from loss so brought about would afford to him a defence to an action by the customer to recover the amount." This view received the approval of the Court of Exchequer in *Halifax Union* v. *Wheelwright, L. R.,* 10 *Exch.* 183, 192, and of Chief Justice Gray in *Greenfield Savings Bank* v. *Stowell*, 123 *Mass.* 196, 201.

This principle affords no foundation for the defendant's proposition, for Kelly's negligence could not form a legal basis for an action by the bank against the plaintiffs.

Looked at in another aspect, the same result is reached. The legal duty of the bank to answer to the plaintiffs for the amount of their deposits did not arise from Kelly's acts, and was not dependent on the state of accounts between him and them, and therefore cannot be affected by showing that he has no claim upon them. His formal release of all claims against them could not impair their legal right to insist that the bank should perform its contract with them as depositors.

The opposite doctrine would involve the plaintiffs in a peril which they should not be required to incur, for the question whether Kelly has lost his right of action against them cannot be conclusively settled against him until he has been heard, and he cannot be heard in the litigation now pending.

We think the proffered defences were rightly overruled, and the judgment for the plaintiffs should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, DEPUE, DIXON, GARRISON, LIPPINCOTT, LUDLOW, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH.    12.

*For reversal*—None.