## MAURMAIR v. NATIONAL BANK OF COMMERCE OF TULSA.

No. 6700—Opinion Filed May 15, 1917.

(165 Pac. 412.)

(Syllabus by the Court.)

### 1. Banks and Banking—Check—Knowledge of Depositor's Signature.

A bank upon which a depositor therein draws a check is charged with knowledge of the depositor's signature.

### 2. Same—Forged Check—Right to Payment.

Where a signature to a bank check is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to enforce payment thereof against any party thereto can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.

### 3. Trial—Instructions—Irrelevant Issue.

It is error for the trial court to instruct the jury upon an irrelevant issue, not raised by the pleadings or of which there is no evidence. when the instruction is calculated to mislead the jury.

Error from Superior Court, Tulsa County; M. A. Breckenridge, Judge.

Action by Louis Maurmair against the National Bank of Commerce of Tulsa, Okla-

homa. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Former opinion (158 Pac. 349) withdrawn.

Sherman, Veasey & O'Meara, for plaintiff in error.

Randolph, Haver & Shirk, for defendant in error.

J. R. Cottingham and S. W. Hayes, amici curiae.

SHARP, C. J. This action was brought by Louis Maurmair to recover $1,170.30 from the National Bank of Commerce of Tulsa, Okla.; it being alleged that plaintiff deposited such sum in the bank and the bank refused to pay the same upon demand. An answer was filed charging payment, except the sum of $130.30, which it was alleged was on deposit in defendant bank subject to plaintiff's check. Plaintiff replied by general denial.

The question presented at the trial related to the payment of three checks of $90, $440. and $510, which were paid by the bank, and the signatures to which the plaintiff claimed were forgeries. The primary issue before the trial court was whether the signatures were genuine or forgeries. There was no claim either by plaintiff or defendant that the signatures were obtained by fraud or trick practiced upon the plaintiff, and no evidence to support such a claim. A witness for the plaintiff sought to show the signatures to have been made from a common signature by tracing over plaintiff's signature, using transfer or carbon paper, so as to obtain his apparent signatures on the checks alleged to be forgeries. By instruction No. 6, which the court gave to the jury over plaintiff's objection, the law was said to be that if the signatures to the checks for $400 and $510 were made by plaintiff, either by directly affixing his signature thereto, or by affixing his signature thereto without his knowledge or consent by means of a deception practiced upon him, by third parties placing carbon papers between the paper on which he knowingly affixed his original signature and the checks thereunder, thereby obtaining carbon copies of his original signature, such copies of his signature would be considered as his original signature, binding upon him; and, further, that if the bank paid such checks in good faith, believing the signatures thereto were genuine, the plaintiff would not be allowed to recover thereon. The instruction is outside of the issues framed by the pleadings and is not authorized by the evidence. Throughout the trial, plaintiff testified that the signatures were not his. Southwell, the handwriting expert, expressed the opinion that the signatures were not genuine, but had been made by the use of Maurmair's signature upon some piece of

paper and the genuine signature, thus secured, used in imprinting his signature upon the checks by the use of carbon sheets. We find no testimony in the record that the signature to the checks was made by the plaintiff, either by the intentional or unintentional use of carbon sheets. On the other hand, the testimony was to the effect that plaintiff had never used carbon paper in his check book, or in any otherwise. In short, there was no evidence to support the contention that plaintiff's signatures to the checks were affixed thereto by means of imposition practiced upon him by a third party placing a carbon paper under some other paper "on which he knowingly affixed his original signature." The evidence on the part of the bank was that the signatures to the three controverted checks were the genuine signatures of the plaintiff.

Obviously, therefore, there is no basis for the instruction complained of; it is wholly outside the issues and without evidence to authorize its submission. The plaintiff, as the bank's creditor, sued to recover for the amount of his deposit; the bank answered pleading payment except as to the sum of $130.30, then on deposit. Plaintiff replied denying that his deposit had been paid him. The burden was then upon the bank to prove payment. This it sought to do by showing that the checks drawn by Maurmair were his genuine checks; not that, because of plaintiff's negligence in and about the making of the checks, he was estopped from urging payment thereto. No question of negligence was raised by the pleadings, nor was it claimed by the bank that the plaintiff was precluded from setting up his claim of forgery because of any conduct on his part that would estop him from asserting his right to payment.

Furthermore, the instruction is opposed to section 4073, Revised Laws 1910, which provides:

"Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument or give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or 'want of authority.'"

A bank is bound to know the signatures of its depositors. Kenneth Investmtnt Co. v. National Bank of Republic, 96 Mo. App. 125, 70 S. W. 173; First Nat'l Bank v. Bank of Cottage Grove, 59 Or. 388, 117 Pac. 293; First Nat'l Bank of Belmont v. Barnesville First Nat'l Bank, 58 Ohio St. 207, 50 N. E. 723, 41 L. R. A. 584, 65 Am. St. Rep. 448; North British & Mercantile Ins. Co. v. Mer-

chants' Nat'l Bank, 161 App. Div. 341, 146 N. Y. Supp. 720; Timbel v. Garfield Nat'l Bank, 121 App. Div. 870, 106 N. Y. Supp. 497; Havana Cent. R. Co. v. Knickerbocker Trust Co., 198 N. Y. 422, 92 N. E. 12, L. R. A. 1915B, 720; Redington v. Woods, 45 Cal. 406, 13 Am. Rep. 190; Morse on Banks and Banking (3d Ed.) vol. 2, par. 480; Daniel on Neg. Inst. (5th Ed.) par. 1654A.

If, in the course of business, a bank pays a forged check, it must be considered as making the payment out of its own funds, and cannot charge the amount against the depositor, unless it shows a right to do so on the ground of estoppel, or because of some negligence chargeable to the depositor. In such circumstances, the depositor must suffer the consequences of his own conduct, and the amount may be charged to him. Harter v. Mechanics' Nat. Bank of Trenton, 63 N. J. Law, 578, 44 Atl. 715, 76 Am. St. Rep. 224; Morgan v. U. S. Mortgage, etc., Co., 208 N. Y. 218, 101 N. E. 871, L. R. A. 1915D, 741, Ann. Cas. 1914D, 462; Hardy v. Chesapeake, 51 Md. 562, 34 Am. Rep. 325.

While this court has on numerous occasions held that instructions not responsive to the pleadings and evidence will not require a reversal of the case if not calculated to confuse or mislead the jury, we cannot conscientiously say that the instruction complained of did not have that effect. On the contrary, from an examination of the record it appears that the instruction was strongly calculated to confuse the issues before the jury to the prejudice of plaintiff, so as to necessitate the reversal of the case. Kingfisher Nat. Bank v. Johnson, 22 Okla. 228, 98 Pac. 343; St. L. & S. F. R. Co. v. Bruner, 52 Okla. 349, 156 Pac. 649; Obenchain v. Roff, 29 Okla. 211, 116 Pac. 782; Chicago, R. I. & P. R. Co. v. Beatty, 42 Okla. 528, 141 Pac. 442.

The judgment is reversed, and the cause remanded for a new trial.

All the Justices concur.