FURLONG v. MANUFACTURERS NATIONAL BANK
OF DETROIT. ;

SAME v. NATIONAL BANK OF DETROIT.

SAME v. DETROIT BANK.

1. PAYMENT—ACCEPTANCE OF A NOTE.
Acceptance of a note is not considered payment of an obligation
due in absence of an understanding it is taken as such.

2. SAME—ACCEPTANCE OF NOTE—EVIDENCE OF INTENT.
In depositors' actions against banks for balance of sums obtained
by plaintiffs' employee by means of forged indorsements on
checks, finding of trial court that taking of note by plaintiffs
from the employee was not intended to be accepted as pay-
ment held, in accord with the evidence.

3. BANKS AND BANKING—PARTIAL RESTITUTION TO DEPOSITOR BY
FORGER.
Mere acceptance by depositors of partial restitution from forger
of indorsement on their checks does not preclude depositors
from recovering balance of defalcations from banks, especially
where evidence shows depositors' desire to cooperate with
banks, and indicates latter were not misled by plaintiffs'
acceptance of partial restitution which minimized the loss.

4. SAME—RATIFICATION OF EMPLOYEE'S FORGERY.
Depositors who retained in their employ an employee who had
obtained funds from defendant banks by forged indorsements
on plaintiffs' checks held, not to have ratified or condoned
such employee's unauthorized acts thereby.

5. SAME—NOTICE OF FORGERY—PARTIAL RESTITUTION.
Banks which received prompt notice of depositors' claim for
credits because of forged indorsements of latter's employee
held, not relieved of liability for reimbursement because de-
positors accepted partial restitution.

Appeal from Wayne; Richter (Theodore J.), J. Submitted June 7, 1938. (Docket Nos. 14, 15, 16, Calendar Nos. 40,021, 40,022, 40,023.) Decided October 3, 1938.

Separate cases of assumpsit by Edward J. Furlong and others, copartners doing business as Paine, Webber & Company, against Manufacturers National Bank of Detroit, National Bank of Detroit and Detroit Bank for sums due on their accounts for forged checks charged thereto. Cases consolidated for trial and appeal. Judgments for plaintiffs. Defendants appeal. Affirmed.

*George E. Brand* and *Orrin C. Jones,* for plaintiffs.

*Lightner, Crawford, Sweeny, Dodd & Toohy (Bodman, Longley, Bogle, Middleton & Farley,* of counsel), for defendant Manufacturers National Bank of Detroit.

*Archer F. Ritchie (Lightner, Crawford, Sweeny, Dodd & Toohy,* of counsel), for defendant National Bank of Detroit.

*Miller, Canfield, Paddock & Stone (Lightner, Crawford, Sweeny, Dodd & Toohy,* of counsel), for defendant Detroit Bank.

Butzel, J. These three cases, involving similar facts, were tried simultaneously in the lower court and consolidated on appeal to this court. On June 8, 1935, plaintiffs discovered that one Keeler, employed by them, had caused their firm's checks to be improperly issued to a customer, one O. J. Rieman, as payee, had forged the latter's indorsement on

the backs of the checks, and had obtained the proceeds from defendant banks.  The banks, in turn, had charged the amounts of the checks against plaintiffs' respective accounts.  On the very same day, plaintiffs wrote to each of the banks calling their attention to the forgeries and stating:

"We take the position that these checks were improperly cashed and charged to our account and attach the list of checks hereto.  It is requested that our account be immediately credited with these improper charges and this notice is given to enable you to take any and all actions which you deem necessary for your protection.

"We will join in, and cooperate with, any action, civil or criminal, which you deem necessary.  The employee is still in the city and reported to our office today so as to not disturb the morale of our office force."

Checks on which the forgeries appeared were turned over to the banks, but were returned to plaintiffs when the banks refused to credit plaintiffs with the amounts of the checks.  After the demand on the banks, but prior to their disclaimers of liability, plaintiffs managed to regain a relatively small part of the funds taken by charging against certain book credits owed Keeler and by obtaining various amounts of cash from him.  On November 30, 1935, the amount still due on account of the defalcations was computed and Keeler gave plaintiffs a demand note for that amount.  After giving the note, he made payments to plaintiffs, totaling $965, over a period of approximately six months and each time received a receipt stating that the payment was to apply on the note.  No release was given Keeler and no express agreement of any kind was made with

him. Keeler continued in plaintiffs' employ for some time, and his wife, who had previously been employed by them, was rehired.

The defendant banks having refused to credit plaintiffs' accounts with the moneys abstracted by the forger, plaintiffs brought these actions to recover the balance yet uncollected. The payments that had been made by Keeler were credited to each of the three banks in the proportion that the amount of the forged checks that each had paid bore to the total amount obtained through the forgeries. Defendants do not deny the forgeries and do not claim that they originally had authority to charge plaintiffs' accounts with the amounts of the checks. Their contentions are that the acceptance of the note from Keeler constituted payment in full of the balance due; that the acceptance of restitution from Keeler constituted an election of one of two inconsistent remedies, barring recovery against the banks; and that the conduct of the plaintiffs in retaining Keeler in his former position, subsequent to the discovery of his wrongdoing, amounted to a ratification of his unauthorized acts. The lower court found for plaintiffs on each issue. Defendants appeal.

The acceptance of a note is not considered payment of an obligation due in absence of an understanding that it is taken as such. *People, for the use of P. Koenig Coal Co.,* v. *Davis,* 237 Mich. 165. The business manager of plaintiffs' Detroit office testified that there never was any agreement with Keeler relative to the shortage and that, in taking the note, he did not intend that it should constitute payment. One of the plaintiffs, who is one of the resident partners in Detroit, testified he had not directed the manager or anyone else to receive a note in full settle-

ment of Keeler's shortage.  There is no testimony whatsoever to the effect that the note was intended to be accepted as payment and, under the circumstances, the mere fact that payments by Keeler were credited on the note is not conclusive that such an intent existed.  The finding of the trial judge is in accord with the evidence and it must be held that a balance is still owing plaintiffs on account of the defalcations.

Defendants contend, however, that by accepting partial restitution from Keeler, plaintiffs have indicated that they consider that their moneys are no longer in the defendant banks, but are in the hands of Keeler; that they have thereby elected to proceed against Keeler and cannot now look to defendant banks.  *Houseman-Spitzley Corp.* v. *American State Bank,* 205 Mich. 268, and *Metropolitan Casualty Ins. Co.* v. *First National Bank in Detroit,* 261 Mich. 450, are to the effect that the mere acceptance of partial restitution from the forger does not preclude a depositor or persons subrogated to his rights from thereafter recovering the balance due from a bank.  The case of *Union Guardian Trust Co.* v. *First National Bank-Detroit,* 271 Mich. 323, does not hold to the contrary.  In that case, a chancery suit against the forger was prosecuted to a decree in favor of the depositor before any formal demand of repayment was made on the bank.  In the instant case, plaintiffs made an immediate demand upon defendant banks.  At no time thereafter did they indicate that they did not intend to pursue their claim against defendants.  The acceptance of restitution from Keeler was quite in accord with their intent, as expressed in the last paragraph of their letter, to cooperate with defendants in recovering the loss.

Defendants were in no way misled by plaintiffs' conduct and plaintiffs' acceptance of restitution in no way prejudiced them, but on the contrary minimized their loss.

By the same token, plaintiffs' conduct cannot be considered a ratification of Keeler's unauthorized acts. Although they retained him in their employ, it was obviously for the purpose of enabling him to make restitution and was not viewed as a condonation of his wrongful acts.

The evidence is quite conclusive that the note was not accepted in payment and that the acceptance of partial restitution was not an election of remedies or ratification. In coming to our conclusion, we are not unmindful of the case of *Midland Savings & Loan Co.* v. *Tradesmen's National Bank of Oklahoma City* (C. C. A.), 57 Fed. (2d) 686, which holds that the acceptance of restitution constitutes election and ratification. Such a conclusion not only is impractical and savors of the academic, but is inequitable and would work to the detriment of both parties who have been wronged. We believe that since the banks had been notified of the claim of the plaintiffs and since the acceptance of partial restitution was beneficial to the banks, the latter are not relieved of their liability to reimburse plaintiffs to the extent of the balance of the funds they wrongfully paid to Keeler.

Judgments for plaintiffs are affirmed, with costs.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH and McALLISTER, JJ., concurred.