GAINES BROTHERS CO. et al. v.
FOURTH NATIONAL BANK
OF TULSA.

No. 30485. Dec. 1, 1942.

Rehearing Denied Feb. 9, 1943.

*133 P. 2d 742.*

Vern E. Thompson and Loyd E. Roberts, both of Joplin, Mo., for plaintiffs in error.

Chas. L. Yancey, G. C. Spillers, and Kavanaugh Bush, all of Tulsa (Charles P. Gotwals, Jr., of Muskogee, of counsel), for defendant in error.

PER CURIAM. Plaintiffs in error, plaintiffs below, commenced this action in the district court of Tulsa county against the Fourth National Bank of Tulsa to recover the sum of $50,000 alleged to have been withdrawn from the account of plaintiff corporation in defendant bank by Frank Gaines, a stockholder and former secretary-treasurer of plaintiff corporation, and converted to his own use under circumstances

which plaintiffs assert were such to charge defendant bank with knowledge of the intent and purpose of said Frank Gaines to withdraw said sum from said bank and convert it to his own use, and that defendant bank was negligent in permitting the withdrawal of said sum so as to make defendant bank responsible therefor.

Issues were joined on the main question. In addition defendant pleaded:

"This defendant further alleges and states that plaintiff is estopped from asserting any claim against it, for the reason that plaintiff has heretofore asserted a claim against said Frank Gaines as an officer of Gaines Brothers Company for said $50,000."

A jury was impaneled to try the issues. In the opening statement of counsel for defendant it was asserted:

"Now there is another feature in this lawsuit. We expect to show that there had been long, lengthy litigation between the Josie Gaines family and Frank Gaines. That it had extended over a long period of time. We expect to show you that this lawsuit, this lawsuit you are now sitting in, right now, was filed and has been on file since 1935. We expect to prove to you that two years, approximately two years, I believe, prior to the time this lawsuit was filed, that Gaines Brothers Corporation, or a nephew of Frank Gaines, had brought suit against him for an accounting, in the district court of Ottawa county, Okla.

"The testimony will further show that this identical money, this $50,000 we are speaking about here, was litigated in that lawsuit. And it will further be our contention as a matter of law that the plaintiff elected to sue Frank Gaines in accounting on contract, and that he was thereby at that time bound to and by that remedy, and that he cannot legally come into this court and sue this bank for conversion of this $50,000, which at all times belonged to Frank Gaines, so far as this bank is concerned."

This brought on a three-way discussion between the court, counsel for plaintiffs, and counsel for defendant as to whether the doctrine of "election of remedies" was sufficiently pleaded, and if applicable, would preclude plaintiffs from prosecuting this action against the bank.

In the course of said discussion it was developed, and counsel for plaintiffs admitted that some two years before this action was commenced, these same plaintiffs commenced an action in the district court of Ottawa county against Frank Gaines for an accounting concerning the transactions of plaintiff corporation while said Frank Gaines was its secretary-treasurer, and other matters covering a period of some 35 or 40 years; that in said action the same $50,000 here involved was taken into consideration. With reference thereto counsel for plaintiffs stated:

"No, here is what we did. We brought an action in accounting by the corporation, by the majority of the stockholders against Frank Gaines, for all of the transactions that had ever been, going back some period of 30 or 40 years. And the court opened up the records for that purpose. It is true, and we have nothing to conceal from your Honor. It is true that in that accounting the withdrawal of this fund from the bank was considered. Now, if that is an election, and if we are barred from bringing this lawsuit, there is no reason of course for us to proceed."

It was then suggested by the court:

"If you parties will stipulate to these facts for the purpose of the record. That an action was brought—an action was commenced against Frank Gaines by the parties plaintiff to this action, to recover $50,000 which is the subject of the alleged converstion (sic) in this case, and is the subject matter of this action; that if, as a matter of law that action against Frank Gaines for the $50,000 was an election of remedies, which such election of remedies would preclude the plaintiffs from recovering and from proceeding further in this action, and that upon the presentation of this question of law to the court to pass upon, the court may upon stipulation take the question of law under advisement at this time and ask for briefs upon the question; and determine the rights of the parties and of the plaintiffs to pursue this action. If you will agree to a stipulation to that effect, I will proceed in accordance therewith and declare a

mistrial and discharge the jury; and will determine this lawsuit upon that stipulation and the briefs as presented in this case."

The record also shows the following statement by Mr. Yancey, of counsel for defendant:

"Your Honor, it is my understanding that counsel has stated positively in the record, and the court will consider it as an admission, that he on behalf of the plaintiffs in this case filed an accounting suit against the defendant Frank Gaines, and in which this particular item of $50,000 was considered by the court?"

To which statement Mr. Thompson, of counsel for plaintiffs, replied: "That is correct."

Thereupon the court declared a mistrial and dismissed the jury and took the case under advisement on the question of whether plaintiffs were precluded in this case by reason of the action against Frank Gaines.

In this connection, on motion of plaintiffs, a copy of the petition filed in the action in accounting against Frank Gaines was filed as a part of the record in this case to be considered by the court in arriving at a decision on the question.

In this connection it may be noted that in the action in accounting, which was consolidated and tried with two other actions then pending in Ottawa county between the same parties involving various transactions and partnership matters between the parties, plaintiffs herein in that action recovered a judgment against Frank Gaines in the sum of $23,735.19. Gaines Bros. Co. v. Gaines, 188 Okla. 300, 108 P. 2d 177.

At the time this cause was submitted to the trial court, the judgment against Frank Gaines above referred to had not become final, since there was then pending a petition for rehearing. The petition for rehearing was denied and the judgment became final December 24, 1940, which was before the decision of this case in the trial court.

The trial court, upon consideration of the question thus presented, including the final judgment in the accounting case, sustained the motion of defendant for judgment on the opening statement of counsel for plaintiffs and on the stipulation for the reason:

". . . that the court is of the opinion that the plaintiffs have elected an inconsistent remedy for the same cause of action from that sought in this action against this defendant and by reason thereof are barred from proceeding with this action. . . ."

Judgment was entered accordingly, and plaintiffs appeal.

The only question involved is whether the trial court erred in holding that plaintiffs are barred from prosecuting this action under the doctrine of "election of remedies."

Plaintiffs contend that the record does not present a case where the two remedies pursued were inconsistent.

The doctrine of election of remedies is that the choice of one of two or more available, but inconsistent, remedies bars recourse to the other. This doctrine, though often criticized as harsh and not a favorite of equity, is widely recognized. Henderson Tire & Rubber Co. v. Gregory, 16 Fed. 2d 589, 49 A. L. R. 1503.

The essential elements of the doctrine are: (a) the existence of two or more remedies; (b) inconsistency between the remedies; and (c) choice of one of the remedies.

If any one of these elements is absent, the result of preclusion does not exist. Henderson Tire & Rubber Co. v. Gregory, supra.

Examination of the petition in the case for accounting against Frank Gaines, as well as the admission in open court of counsel for plaintiffs, clearly shows that the identical $50,000 here involved was considered and taken into consideration in adjusting the various conflicting claims of the parties.

The petition, after setting out at length the relation of the parties and

their various and complicated business transactions, alleged that on or about January 24, 1933, said defendant, Frank Gaines,

". . . while acting in said fiduciary capacity as secretary and treasurer of the plaintiff corporation, without any authority from the Board of Directors of said company, wrongfully withdrew from the treasury of said company the sum of $100,000; that prior to the bringing of this action a demand has been made upon the said defendant for the return of said amount and that he has refused to do so.

". . . until on or about January 24, 1933, at which time the defendant, Frank Gaines, withdrew from the corporation's depository at Tulsa a sum of money in the amount of $100,000 (sic) which he wrongfully failed and refused to redeposit to the credit of the corporation, according to the understanding and agreement, and which he has since wrongfully withheld and refused to pay into the treasury of the plaintiff corporation. The plaintiff herein alleges that the defendant, Frank Gaines, has wrongfully misappropriated said amount to his own use. . . ."

Prayer was for full and complete accounting for all his transactions with the company. Reference to the final judgment entered in this case, 188 Okla. 300, 108 P. 2d 177, will show how the accounts were finally adjusted, and that judgment was entered against Frank Gaines for $23,735.19.

It being conceded that the $50,000 here involved was taken into consideration in arriving at the amount due from Frank Gaines to the corporation, it necessarily follows that plaintiffs had the benefit of the $50,000 here involved in obtaining the judgment as above stated. Without consideration of the $50,000 item here involved, the judgment would necessarily have been the other way. That is, without charging this $50,000 to Frank Gaines, he would have been entitled to a judgment in his favor of approximately $26,000. It is thus made clear that plaintiffs pursued a remedy against Frank Gaines, and obtained full satisfaction of their claim concerning the $50,000 here involved to

the extent of approximately $26,265, and have an unsatisfied judgment against Frank Gaines for the remaining $23,735.19; that, in any event, if the bank be held liable, its liability could be no more than $23,735.19.

Defendant relies upon the rule laid down in Fowler v. Bowery Sav. Bank, 113 N. Y. 450, 21 N. E. 172, following a number of cases in the same state and in other jurisdictions where similar facts were involved.

In the Fowler Case, supra, it was held:

"W. deposited money with defendant, a savings bank, in trust for his wife, E. The pass-book read, 'In account with W. for E.' Afterwards both W. and E. die, and plaintiff, E.'s executor, demanded the deposit of defendant. He was told that the money would be paid to him when he presented the pass-book, which was then in possession of W.'s executor. W.'s executor afterwards presented the book, and received the deposit. *Held,* that plaintiff, by suing W.'s executor for the amount of the deposit, ratified the payment to him, and, having then exercised his election, could not afterwards maintain an action therefor against defendant."

In Jones v. First Nat. Bank, 3 Neb. (Unof.) 90 N. W. 912, it is held:

"A depositor, who claims that a bank has paid out his money to a person not entitled to receive it, has an election to sue the bank or the person who received the money, but cannot proceed against each, unless in cases of conspiracy or joint wrong."

And:

"Prosecution to final judgment of a suit against the person to whom the money was paid is an election to treat the payment by the bank as proper and authorized, and will bar a subsequent suit against the bank for the amount of the deposit."

In Crook v. First Nat. Bank, 83 Wis. 31, 52 N. W. 1131, it is held:

"An action ex contractu, brought by an administrator to recover money claimed to have been wrongfully paid to defendant by a certain bank, con-

stitutes an election and ratification of the payment, and precludes a subsequent action against the bank on the same claim."

Shonkweiler v. Harrington et al., 102 Neb. 710, 169 N. W. 258, though not a bank deposit case, is similar in principle. It is there held:

"One whose property has been wrongfully converted by others may maintain an action in tort against the wrongdoers, or may waive the tort, and sue as upon an implied contract to pay the value of the property; but he cannot maintain an action as upon an implied contract against some of the wrongdoers, and at the same time another action in tort against other wrongdoers."

Other cases are cited where the fact situations were somewhat similar where the same rule or principle was applied. The reason advanced in support of the holding seems to be that a depositor, or one in a similar relation, may not proceed against the person to whom he claims his money was wrongfully paid, on the theory that such person has obtained his money and holds it for his use under an implied promise to pay it over to him as the rightful owner, and pursue his remedy to a judgment against such person and on failure to collect come back and sue the bank on the theory that his money deposited with the bank was not paid out, and therefore remains to his credit in the bank.

That is, he may not say to the one, "You hold my money in your possession which you are in duty bound to pay over to me," and at the same time say to the bank, "You still hold my money and are in duty bound to pay it over." The two remedies are said to be inconsistent, and therefore an election to pursue the one bars pursuit of the other.

The cases cited and quoted from above appear to support the contention of defendant herein, without exception.

In Fowler v. Bowery Sav. Bank, supra, the following statement is made:

"If the money had been absolutely the money of the plaintiff, left on special deposit with the bank, then he could have pursued the money wherever he could trace it without losing his remedy against the bank. In such a case the plaintiff would not be barred of his right of recovery against the bank until he had either recovered his money or the value of the same. All his remedies would be consistent, being based upon the theory of a wrongful disposition of his property."

We also note the exception stated in paragraph 5 of the syllabus quoted above from Jones v. First Nat. Bank, supra, wherein it is stated that a depositor, who claims that a bank has paid out his money to a person not entitled to recover it, has an election to sue the bank or the person who received the money, but cannot proceed against each, unless in cases of conspiracy or joint wrong. The exceptions we refer to are "in cases of conspiracy or joint wrong."

In this connection it may be noted that plaintiffs in this action make no claim of liability against the bank for or on account of the original withdrawal from plaintiff's account of the $100,000 by Frank Gaines, and the manner in which it was accomplished. In fact, they specifically admit that the bank incurred no liability whatever to them on account of that transaction, which took place, according to the pleadings, about January 24, 1933. In the opening statement of counsel for plaintiffs he stated:

"Now, we do not charge the bank with negligence in permitting the withdrawal of that $100,000 because up until that time the bank had a right to believe that if a check would come in in the regular course of business which looked regular on its face, that it was drawn for some job by either one of the partnerships, although that was an unusual amount."

It is subsequent transactions occurring from about July 18 to August, 1933, upon which plaintiffs rely. The petition, after reciting the withdrawal of the $100,000 on or about January 24, 1933, alleges:

"That thereafter, and after the defendant had been advised of the cir-

cumstances surrounding and attending said unauthorized withdrawal by the said Frank Gaines, the said Frank Gaines returned and redeposited to the credit of Gaines Brothers Company's account Fifty Thousand Dollars ($50,-000.00) of the said $100,000 previously wrongfully withdrawn; that immediately thereafter the said Frank Gaines, without any authority or right, drew a check in the amount of Fifty Thousand Dollars ($50,000.00) on said Gaines Brothers Company's account, signed by himself, made payable to himself, and endorsed by himself, for deposit to his individual account in said defendant's bank; that said Frank Gaines never maintained, until said $50,000.00 check was drawn by him, any individual account in defendant's bank; that said $50,000.00 was wrongfully drawn and was drawn for the purpose of converting the funds belonging to Gaines Brothers Company to his own use and benefit; that the $50,000 so withdrawn was converted to his use to the damage of Gaines Brothers Company in that amount."

It is also alleged in substance that after the original withdrawal of the $100,000 from the company's account, as above stated, the defendant bank was advised that the $100,000 withdrawal had been made without the knowledge, consent, or authority from plaintiff corporation, and that plaintiff corporation intended to demand from Frank Gaines that he return the money to the credit of Gaines Brothers Company; that when the defendant bank permitted Frank Gaines to withdraw said $50,000 from the account on a check made payable to himself and endorsed by himself and place the proceeds thereof to his individual credit and thereafter withdraw the same for his own use, the bank "acted carelessly and negligently and either knew or should have known from the facts and circumstances that said Frank Gaines was wrongfully converting said $50,000 to his own use. . . ."

If that be true, it would seem to present a case of collusion or joint wrongdoing.

In such case we see no reason why plaintiffs could not with consistency pursue the money in the hands of Frank Gaines by the action in accounting without loss of right to sue the bank for its negligent and wrongful acts. The Gaines Brothers Company could say to Frank Gaines, "You acted wrongfully in accepting the money to which you knew you were not entitled," and to the bank: "You acted wrongfully in permitting the withdrawal from the company's account by Frank Gaines, knowing at the time that Frank Gaines was not entitled to the money." Plaintiffs are, if the facts be as alleged, entitled to pursue either or both until full restitution is made. However, but one restitution may be claimed. If Frank Gaines should pay the judgment against him, the claim of plaintiffs would be fully satisfied. Until that is done, the bank, if the facts are as alleged, would be liable to the extent of the unpaid judgment, but no further.

We understand from statements made that there is or may be a sharp conflict in the claims of the respective parties as to whether Frank Gaines actually redeposited the $50,000 to the credit of the Gaines Brothers account, or that said sum was inadvertently credited to said account in violation of the instructions of the forwarding bank, and under circumstances which would require the bank to transfer the credit from the corporation's account to the credit of Frank Gaines individually. Upon that question and other questions which appear to be involved, we express no opinion. They will be for consideration by the court upon the trial of the case on the merits.

Having concluded that there was no election of remedies as to preclude the prosecution of this action against the bank, the judgment is reversed and the cause is remanded for further proceedings.

WELCH, C. J., and OSBORN, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. CORN, V. C. J., dissents. RILEY and DAVISON, JJ., absent.