The FIRST NATIONAL BANK OF McALES-
TER, Oklahoma, a corporation,
Plaintiff in Error,

v.

Walter H. MANN, d/b/a Mann's Flower
Shop, Defendant in Error.

No. 40102.

Supreme Court of Oklahoma.

Sept. 7, 1965.

Rehearing Denied Jan. 25, 1966.

Arnote, Bratton & Allford, McAlester, for plaintiff in error.

A. James Gordon, McAlester, for defendant in error.

BERRY, Justice.

For many years Walter H. Mann had operated Mann's Flower Shop in McAlester, Oklahoma, and during this time had been a customer of plaintiff in error, hereafter referred to as the Bank or defendant. By reason of necessity and convenience, Mann had employed Lloyd Puckett, operator of a bookkeeping service, to keep his books, make tax returns and handle related business affairs. Puckett employed one Morrison, who at all times involved handled the

Mann account. Under Morrison's handling of the books, Mann's financial position steadily worsened. Eventually, as result of a conference occasioned partially by economic stress, Puckett's services were terminated and Mrs. Mann assumed the bookkeeping and financial affairs on January 1, 1959.

Her investigation and handling of their business affairs revealed that Morrison for some time had regularly and consistently manipulated the financial records to his own advantage. Under questioning, Morrison admitted that between 1955 and 1958 he had embezzled approximately $600.00 per month from the Mann's Flower Shop account in the bank. The defalcation had been accomplished by means of checks drawn for cash against the account, to which the name of Walter H. Mann as drawer had been forged by Morrison. The checks were negotiated at the bank in the ordinary course of business by Morrison, who retained the proceeds of the forgeries. The total misappropriation amounted to $26,725.00, as disclosed by Morrison's written statement to the county attorney.

Full amount of the loss was not ascertained until a detailed audit was completed. As bookkeeper and agent for her husband, Mrs. Mann notified the bank of her findings relative to Morrison's activities, and requested the bank to furnish photographic copies of certain missing checks for use in making the audit. On March 3, 1959, the Manns' attorney wrote a letter to the bank which was delivered in person along with 47 questioned checks, or photocopies of checks, to an officer of the bank. On December 18, 1959, written demand was made upon the bank to pay a total of $6,300.00, representing the proceeds of 20 checks alleged to have been forged and negotiated by Morrison between February 25, 1958, and December 20, 1958. Demand for payment was refused and Mann brought suit to recover the face amount of such checks, with interest from the date each was paid.

As plaintiff, Mann alleged the defendant bank's corporate existence, existence of the customer and bank relationship, and that only plaintiff was authorized to draw funds from the account upon his signature. The petition substantially alleged the circumstances just recited, Morrison's lack of authority to draw funds from the account, and the bank's acceptance and cashing of forged checks and payment of the proceeds to Morrison without authority. Further, that upon discovery of the forgeries on February 16, 1959, plaintiff's agent (Mrs. Mann) advised the bank of the facts and furnished all information available, and thereafter caused further notice to be given; prior to giving notice plaintiff lacked definite information, but upon discovery gave notice and information to defendant and made demand for payment, which the bank refused. Plaintiff asked judgment for the amount of the forged checks, together with interest on the separate amounts.

After disposition of preliminary motions, the bank answered by general denial. Defendant affirmatively alleged plaintiff's claim was barred by the statute of limitations for failure to give the notice required under 6 O.S.1961, § 118w; estoppel arising from plaintiff's overall conduct; election of remedies arising from plaintiff's agreement to accept partial restitution from Morrison in settlement of the loss; negligence of plaintiff without which loss would not have occurred; existence of an employer and employee relationship by virtue of which the loss was the employer's liability.

Plaintiff replied by general and specific denial of matters asserted in the answer. The issues raised were tried to a jury. Demurrers to plaintiff's evidence and motion for directed verdict were overruled and the matter was submitted to a jury. A verdict was returned for plaintiff for the amount sued for, upon which the judgment herein appealed was rendered.

In this appeal defendant presents four propositions as grounds for reversal. The first and principal contention states:

"A depositor is under an implied duty to the drawee bank to make an adequate examination of the cancelled checks

which are returned to him by the bank at regular intervals, and, where the bank has observed reasonable commercial standards, and where the depositor's bookkeeper had forged the depositor's signature to several checks every month for a period beginning at least in 1955 and continuing until December, 1958, with each forged check being for substantial sums and in the aggregate amount of $26,725.00, and where the depositor's neglect or delay in discovering and reporting such series of forgeries results in subsequent loss through payment between February 25, 1958, and December 20, 1958, of 20 such forged checks, in the aggregate amount of $6,300.00, the bank is absolved from liability for payment of these 20 subsequent forged checks, and the depositor is estopped from asserting these later forgeries."

It is observed this contention really presents two theories of nonliability: (1) defendant was not negligent in cashing the forged checks and plaintiff failed to show he was free from negligence; (2) plaintiff is estopped to claim recovery since Morrison's acts were consistent with Mann's authorized practices of permitting Morrison to make regular deposits and withdrawals. Defendant asserts the evidence shows the forgeries began as early as 1955, and continued from month to month by Morrison's drawing checks in varying amounts ($200–$350) and cashing these at the teller's window, in some instances with his own endorsement. Defendant bank furnished the usual monthly account statement which, except for several months in 1958, was returned to plaintiff from the bookkeeping service at different times. Defendant points to this as evidence of negligence in view of the unusual circumstances revealed by recurring overdrafts in plaintiff's account occasioned by the forgeries, special notices of the overdrafts being mailed to plaintiff. And that despite this, plaintiff allowed Morrison to lag behind in keeping the books. As concerns the bank statements, these were picked up by Morrison each month, ostensibly to be used in the bookkeeping, and thereafter turned over to plaintiff but often did not contain the forged checks. Several months' statements were found in Morrison's car when repossessed after discovery of his manipulations. Defendant delivered the bank statements to Morrison without dating the usual receipt, and upon his signature for plaintiff's statements delivered along with those of other bookkeeping clients.

Defendant insists that where a series of forgeries are involved there are two classes of checks to be considered and different rules of law are to be applied: (1) checks paid and returned with the first monthly statement after the forgeries begin; (2) other checks similarly and subsequently forged. As this case arose before the Uniform Commercial Code (12A O.S.1961, § 3-406) became effective, it is governed by 48 O.S.1961, § 43, which provides:

"Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority. R.L.1910, § 4073."

Defendant's position is that decisions construing this statute apply same as a bar to the depositor's recovery where there has been a failure to examine bank statements and canceled checks and a loss to the bank results, the depositor being precluded from denying later forgeries after being charged with notice of prior forgeries. Cited in support of the foregoing are Maurmair v. National Bank of Commerce of Tulsa, 63 Okl. 283, 165 P. 413, and Negim v. First State Bank of Picher, 172 Okl. 602, 49 P.2d

763. The Maurmair case declares two rules which are of general recognition:

"A bank upon which a depositor therein draws a check is charged with knowledge of the depositor's signature.

"Where a signature to a bank check is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to enforce payment thereof against any party thereto can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

Authorities from other jurisdictions also are cited but require no extended discussion.

█ The general rule is that a drawee bank is required to know the signature of its depositors, and pay only such checks as have genuine signatures. Mitchie on Bank & Banking, Vol. 5B, Ch. 9, Sec. 274. This is the rule recognized in Maurmair, supra. The exceptions to what may be denominated an unvarying rule arise only where the bank can invoke principles of negligence or estoppel against the depositor. National Bank of Commerce v. Fish et al., 67 Okl. 102, 169 P. 1105, L.R.A.1918F 278; Maurmair v. Bank, supra; 10 Am.Jur. (2) Banks, Sec. 519, state the rule in this language:

"A bank is under an obligation to its depositor to use care in scrutinizing checks paid in order to detect forgeries, and to render its accounts to prevent the perpetration of frauds upon its depositors. * * * Or, stating the rule in terms of negligence, a bank which is guilty of negligence in failing to discover an alteration or forgery cannot avoid liability on the ground that the depositor was negligent in failing to examine his balanced passbook, statement of account, or returned checks. * * *

"Consequently, in every case * * * the preliminary question to be determined is whether the bank was or was not guilty of negligence in making the payments. If it was negligent, if its officers are found to have failed to exercise due and reasonable care in detecting the forgery or fraud, then the subsequent negligence of the depositor, his failure to perform his duty in examining his passbook and vouchers with reasonable care and to report to the bank in a reasonable time any errors or mistakes, will constitute no defense."

█ The basis of the tax rule, as expressed by other courts, is that the bank is charged with knowledge of the depositor's signature and pays a forged check at its own peril. Thus the bank cannot be considered as paying because previous forgeries were not reported, but rather because on its own negligent inspection it assumed the checks were genuine. Herbel v. Peoples State Bank of Ellinwood, 170 Kan. 620, 228 P.2d 929; Wussow v. Badger State Bank of Milwaukee, 204 Wis. 467, 234 N.W. 720, and 204 Wis. 467, 236 N.W. 687. In Herbel, supra, the Kansas Court stated in the syllabus:

"10. A bank starts with the burden of strict liability and is then virtually an insurer of the validity of a depositor's signature. That strict liability is modified if the depositor breaches his duty to the bank. Thereafter the bank's duty is only to exercise reasonable care in the detection of forgeries but failing in that it is not relieved of liability merely because the depositor is also negligent.

"11. A bank has no right to invoke the equitable doctrine of estoppel against a depositor as a defense when the evidence discloses the bank itself has been derelict in the performance of its duty, first, by violating its primary contractual duty not to pay forged checks and, second, in failing at all times thereafter to exercise at least reasonable care, which negligence would have caused the loss irrespective of the depositor's negligence and

which, in any event, clearly contributed thereto."

Although conflicting in some respects the evidence reasonably showed the bank statements of plaintiff's account regularly were delivered to Morrison, along with statements of other accounts. The receipts bore his signature, but defendant's records in no instance showed the date delivered. Admittedly the failure to require receipts to be dated on delivery resulted from carelessness of defendant's employees, and there was no evidence that plaintiff authorized or directed delivery of the statements to Morrison. However, when plaintiff's wife requested the privilege of viewing certain checks, defendant required plaintiff's authorization before she was permitted to examine the account. Prior to commencement of the forgeries plaintiff's account was an ordinary commercial account with occasional overdrafts, but changed to an account very frequently overdrawn by a series of checks drawn payable to cash, some of which were presented to a bank officer for approval before being cashed. However, between 1945 and 1958 this officer, who regularly handled plaintiff's account, could not remember having looked at plaintiff's signature card. Overdrafts on plaintiff's account were frequent and this officer would "okay" same because it was known plaintiff would cover them and considered there was no cause for alarm, although formerly plaintiff's overdrafts were infrequent. Defendant simply considered it was extending credit, which was considered as good banking practice as long as plaintiff was involved.

The head teller, at whose window 14 of 20 forged checks were cashed, did not know Morrison personally but only as plaintiff's bookkeeper, and that he made deposits and cashed checks. Beginning in the latter part of 1957 Morrison made withdrawals from the account on checks payable to cash, stating this was for paying bills. The witness had examined plaintiff's signature card and was of the opinion the signature was genuine, and so did not require Morrison's signature on these checks. The signature cards were in a filing cabinet some 25 feet from the tellers' cages. The last time the witness examined plaintiff's card was in February, 1958, when a check payable to cash was presented and the card was checked because he doubted the signature. No check drawn on plaintiff's account had been taken and compared with the signature. There was evidence the checks were skillfully forged and not detectable upon casual inspection, but that an experienced bank teller could distinguish readily between forgeries and genuine signatures.

■ Plaintiff's evidence showed that substantial sums had been paid out of his account on forged checks, and demand for repayment had been refused by defendant. This showing made out a prima facie case and plaintiff was not required to go further and show himself free from negligence. The burden was upon defendant to prove itself free from negligence since it had paid the forged checks at its own peril. 5 Zollman, Banks and Banking, Sec. 3411. The primary issue was whether the bank was negligent in failing to detect the fraud. 10 Am.Jur.2d, Banks, Sec. 519. This was a question of fact to be determined by the jury. The summarized evidence sufficiently discloses fact questions which raised issues required to be submitted to the jury whose finding thereon is conclusive if supported by competent evidence.

■ At this point there remains for consideration the contention that plaintiff was estopped to assert any claim against defendant because of failure to examine the bank statements and discover and report the forgeries. Authority for such argument is derived from Negim v. First State Bank, supra, and Maurmair v. National Bank of Commerce, supra. In our opinion, the rule relied upon is subject to the qualification expressed in the text rule above quoted, that when a bank has been guilty of negligence in handling an account, the depositor's subsequent negligence supplies no defense. The text rule is supported by numerous cases cited in footnote 20, p. 491, including the Herbel case, supra, wherein the Kansas Court

collected an impressive array of authority (228 P.2d at p. 936), and quoted extensively from Leather Manufacturers' Bank v. Morgan, 117 U.S. 96, 6 S.Ct. 657, 29 L.Ed. 811, and Glassell Development Co. v. Citizens' Nat. Bank of Los Angeles, 191 Cal. 375, 216 P. 1012, 28 A.L.R. 1427.

■ In disposing of the estoppel argument in the Herbel case, the Court observed that the rule as to a depositor's duty to notify a bank of forgeries is not based upon contract, and in absence of special agreement the depositor's duty is based upon an equitable doctrine. Thus, before a bank is permitted to raise the defense of a depositor's violation of equitable principles, the bank first must show itself free from negligence in performance of its own primary contractual duty. Pointing out that the defendant bank had been "originally and continuously negligent" in discovering the forgeries, the Kansas Court said:

"Concerning the doctrine of estoppel, it properly has been asserted: ' * * * an estoppel in equity does not arise unless the one asserting it has acted with due diligence. Due diligence being necessary to enable one to assert an estoppel, the bank must show due diligence before it can assert the negligence of the depositor. The whole doctrine of estoppel is a creation of equity and is governed by equitable principles. [2] Pomeroy, Equity Juris. (4th Ed.) § 813. The bank's freedom from negligence is treated as a "preliminary question" in * * * [citations]. * * *' Wussow v. Badger State Bank, supra, 204 Wis. at page 474, 234 N.W. at page 722."

■ As in Herbel, the bank's negligence in the present case in failing to discover the forgeries was the primary negligence, which never ceased. Except for the breach of duty and continuing negligence there would have been no loss. To hold plaintiff was guilty of negligence which constituted proximate cause of the loss would relieve the defendant of contractual responsibility, and shift the entire responsibility for discovery of forgery onto the plaintiff. Such a broad exemption would invite carelessness by relieving banks of the duty to exercise reasonable diligence to detect forgeries. A depositor's negligence cannot be the basis for relieving the bank of its continuing duty to exercise reasonable care.

Defendant's second contention is:

"A bank is not liable to its depositor for payment of a forged check unless within 12 months after return of vouchers paid from his account, or notice to him that the vouchers are ready for delivery, the depositor notifies the bank that 'the check so paid' is forged."

The statute, 6 O.S.1961 § 118w, provides:

"No bank, or trust company, doing business in this State, which has paid and charged to the account of a depositor any money on a forged, altered, or raised check issued in the name of said depositor shall be liable to said depositor for the amount paid thereon unless either (1) within twelve (12) months after notice of said depositor that the vouchers representing payments charged to the account of said depositor for the period during which such payment was made are ready for delivery, or (2) in case no such notice has been given, within twelve (12) months after the return to said depositor of the voucher representing such payment, said depositor shall notify the bank or trust company that the check so paid is forged, altered, or raised."

The argument is that the statute is one of limitation, application of which involves consideration of: (1) when did the one-year period begin to run; (2) when did plaintiff give the statutory notice to defendant. It is urged that since actual delivery of statements was not required, either delivery or notice the statements were available was sufficient, and plaintiff admittedly knew statements were available after the first of each month. Defendant relies upon the case of G. Franklyn Fischer & Associates,

Inc. v. First National Bank of Atlanta, 102 Ga.App. 567, 116 S.E.2d 902, as authority for the claim that our statute, supra, which has not been construed, is a limitation statute. Contrariwise, plaintiff points to the holding in Valley National Bank of Phoenix v. Electrical Dist. No. 4 Pinal County, 90 Ariz. 306, 367 P.2d 655, holding a statute of similar import was not one of limitation, but simply provided a condition precedent to establishing liability. Under this record it is unnecessary to settle this question.

Assuming notice to defendant by plaintiff was required, it is undisputed that the matter of Morrison's defalcations were discussed with one of defendant's officials by February 17, 1959. Thereafter, written notice was furnished, together with many checks considered as forgeries, but the bank officer advised plaintiff's attorney the matter should be submitted to the bank's attorney and took no further action. This written notice was given March 3, 1959, and there was no evidence to establish that the February bank statements were made available to plaintiff prior to that date. The evidence bearing upon the careless handling of the bank statements by defendant has been noted. Unquestionably, bank statements for an undetermined number of months never reached plaintiff after being delivered to Morrison, since they were found in his repossessed automobile after the forgeries were discovered. The evidence also showed that the bank statements for the period were delivered to the forger. There was no evidence to establish when the plaintiff received possession of the forged instruments, although it did appear that in some bank statements from which plaintiff's wife began her audit the forged checks had been removed.

▬ We have not considered the question of limitation under such circumstances heretofore. We are impressed, however, with the reasoning and result in Benge v. Michigan National Bank, 341 Mich. 441, 67 N.W.2d 721, 50 A.L.R.2d 1108 cited by plaintiff. In that case the plaintiff's husband forged checks against her

account, and then intercepted the bank statements when mailed, so that notice of the forgeries never came to plaintiff. In an action to recover the amount of the forgeries the bank claimed the action was barred under a statute requiring notice to the bank within three months after voucher of such payment was returned to the depositor. It was held that requiring return of vouchers to the depositor fairly could be construed as requiring receipt thereof. A depositor who neither received nor had knowledge of forged checks charged against his account should not be denied the right to recover because of failure to give the statutory notice. Had such result been intended, the Legislature could have expressed such intent.

▬ We are of the opinion the evidence failed to show that the monthly statements for the period involved reached the plaintiff, although it did appear defendant was advised of the forgeries immediately upon same being discovered. The 20 checks involved all were issued within 12 months from the date the first forged check should have been returned to plaintiff. These circumstances destroy the soundness of the defense sought to be asserted.

▬ The third contention is that plaintiff is barred from asserting any claim against defendant by reason of having accepted partial restitution from the forger. Defendant points out that partial restitution was made prior to plaintiff's advising defendant of the number of checks claimed to be forgeries and the total claim asserted against the bank. As part of the argument defendant complains of an instruction (No. 6) given by the trial court, and the refusal to give two instructions which defendant requested. Essentially, defendant's position is that plaintiff made an election of remedies, and the trial court erred in instructing the jury that defendant had not been prejudiced by the settlement made since, as a matter of law, the settlement did not preclude defendant from taking any steps desired to collect from Morrison.

Defendant's assertion of prejudice, because deprived of the right to proceed against Morrison until plaintiff accepted partial restitution and then notified defendant of the amount of the depositor's claim, is not supported by the evidence. As early as March 3, 1959, defendant was advised that 49 forged or altered checks totaling $15,350.00 had been cleared and paid out of plaintiff's account. Further, that additional checks probably had been paid by defendant, but absence of bank statements made it impossible to ascertain the amount, and expert examination would be required to ascertain the amount, and expert examination would be required to ascertain the actual forgeries. Being on notice of the commission of forgeries, the defendant had means at its disposal to ascertain the probable extent thereof and to initiate such steps as were indicated to seek recoupment.

Defendant's plea that acceptance of partial restitution estopped plaintiff from asserting a claim for recovery cannot be sustained. In Gaines Bros. Co. v. Fourth National Bank of Tulsa, 192 Okl. 59, 133 P.2d 742, 144 A.L.R. 1434, the issue was whether an election of remedies has been made which barred an action against the defendant bank to recover funds wrongfully paid to the Secretary-Treasurer of the plaintiff who was converting same to his own use. The identical funds previously had been taken into consideration in adjusting conflicting claims in another action between the corporation and the former treasurer for an accounting. The trial court's judgment that an election of an inconsistent remedy for the same cause of action had occurred was reversed on appeal. We recognized that where a joint wrong had been committed, no reason existed for holding that plaintiff could not with consistency pursue the money in the convertor's hands by an accounting action without losing the right to sue the bank for its negligent and wrongful acts; and either or both could be pursued until full restitution was made.

A wide diversity of opinion upon the problem may be observed in annotations in cases cited in annotations in 28 A.L.R. 1417, 118 A.L.R. 567, and 144 A.L.R. 1434. In Furlong etc. v. Manufacturers National Bank of Detroit, 285 Mich. 517, 281 N.W. 309, 144 A.L.R. 567, the factual situation was analogous to those in the present appeal, except that the depositor partially recouped from the defaulter by offsetting money owed the forger, acceptance of cash, and taking the forger's note for the balance. In denying the bank's plea of inconsistent remedies, that court stated that mere acceptance of partial restitution from the forger did not preclude the depositor, or persons subrogated to depositor's rights, from recovering the balance due from the bank. The court expressly declined to follow the holding in Midland Savings & Loan Co. v. Tradesmen's National Bank, (10th CC) 58 F.2d 686, holding partial restitution constituted election. That court pointed out that such conclusion was inequitable and would work to the detriment of both parties, whereas partial restitution was beneficial to the bank. The factual dissimilarity between Midland and the present appeal is so wide as concerns matters which provided basis for holding estoppel by election had occurred, that the holding therein cannot support defendant's contention here.

▮ Neither can defendant assert that it was entitled to a directed verdict on the theory plaintiff's claim was barred by electing to accept partial restitution. The doctrine of election of remedies is an equitable doctrine. 18 Am.Jur., Election of Remedies, Sec. 4. It is to be applied only in instances where the party relying thereon has been injured, and herein defendant wholly failed to show injury.

▮ Further contention is made that the trial court erred in sustaining objection to certain reports tendered in evidence by defendant, but no authority is cited to support this argument. Where error of the trial court is asserted but not supported by authorities, and the record discloses there was no error, and substantial justice has

84

been done, judgment may be affirmed without discussion of assignment.

Affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, IRWIN, HODGES and LAVENDER, JJ., concur.